HENRY POST

*v.*

SADIE HAGEN et al.

[Decided March 1st, 1909.]

1. The rules governing the liability of a party in possession of land, required to account for rents for the benefit of a successful claimant to the whole or a part of such land, vary according as such party occupies the position of trustee, mortgagee in possession, tenant in common, or tenant in possession by fraud.

2. A suit to set aside a deed of gift on the ground that the conveyance was substantially all of the donor's property, and that, in making it, the donor did not have proper independent advice, differs from a suit to set aside a deed of gift on the ground of the fraud of the donee, and in the former case the improvident conduct of the donor, in which the donee may not have participated and of which he may not have had notice, constitutes the fatal defect, while in the latter it is the voluntary conduct of the donee which avoids the deed.

3. Where a deed of gift was set aside as improvident under the rule of independent advice, the only wrong of the donee, who took no part in the procurement of the deed, consisted of an inequitable retention of title after receiving notice of the facts making the title void or voidable as to the donor or his heirs.

4. A deed of gift which may be set aside on the ground of the improvident conduct of the donor, in which the donee did not participate, may be ratified by the donor or his heirs.

5. A donee in a deed of gift, set aside on the ground of the improvident conduct of the donor in which the donee did not participate, is not chargeable with the rental value of a' part of the premises, which she did' not occupy, from which she received no rent, and which she kept vacant for the occupancy of the donor's heir, who obtained the decree setting aside the deed.

6. A donee in a deed of gift, set aside at the suit of an heir of the donor on the ground of the improvident conduct of the donor, cannot, when accounting for the profits while in possession of the premises, obtain an allowance for insurance policies, which she took out in her own name and for ·her own benefit and without the knowledge of the heir.

7. A donee in a deed of gift, when accounting for the profits to the heir of the donor obtaining a decree setting aside the deed on the ground

of the improvident conduct of the donor, cannot charge for services personally rendered in taking charge of the premises and collecting the rents.

8. The money loaned by a donee in a deed of gift to an heir of the donor obtaining a decree setting aside the deed on the ground of the improvident conduct of the donor, and directing the donee to account to the heir for the rents of the premises, is not available as a set-off against the rents, especially where the order of reference merely directs the master to make both parties all just allowances, which relates only to the subject-matter of the accounting.

9. Where the court of errors and appeals set aside a deed of gift at the suit of an heir of the donor, on the ground of the improvident conduct of the donor, and directed the donee to account to the heir for the rents of the land and pay over to him a specified part thereof. the donee making no claim in such suit for money advanced to the heir for the support of himself and family, could not enforce a claim for such advancements, when called on to account for the rents.

On exceptions to master's report.

*Mr. James A. Gordon,* for the exceptant.

*Mr. William T. Hoffman,* for the defendants.

STEVENSON, V. C.

The final decree in this cause directed the defendant Sadie Hagen to "account to the complainant for the rents and income" of the lands which have been the subject-matter of this litigation, and to "pay over to him one-half of the net rents and profits." The nature of this litigation and the character of the possession of the premises in dispute by the defendant Sadie Hagen, out of which arose her liability to account to the complainant, her brother, are fully disclosed in the report of the case in this court and in the court of errors and appeals. *Post* v. *Hagen, 71 N. J. Eq. (1 Buch.) 234. 242.*

Where a party in possession of land is required to account for rents, issues and profits for the benefit of a successful claimant to the whole or a part of such lands, the rules which govern the accounting and control the liability of the party in possession and give effect to evidence or lack of evidence, oral or written,

bearing upon any item or items of the account, vary in different cases, according as the accountant may occupy one or another of several widely different positions, such as trustee, mortgagee in possession, tenant in common, tenant in possession by fraud, &c.

The first exception to the master's report in this case is based upon the failure of the master to charge the defendant Mrs. Hagen "with the rental value of the lower floor" of one of the houses situate upon the land in litigation. Mrs. Hagen in fact received no rent for this floor, and did not occupy it herself. Counsel for the complainant insists in his brief that Mrs. Hagen was "in possession of the property and claiming title to it under a fraudulent conveyance," and that she was "fraudulently and wrongfully in possession of the property," and that had it not been for this "fraud, the complainant might have collected his own rents or had possession of his own portion of the estate."

There was certainly nothing in the decision of this court, and I can find nothing in the decision of the court of errors and appeals which can in the slightest degree sustain these charges of fraud made against the defendant Mrs. Hagen, upon this accounting. The bill of complaint charged Mrs. Hagen with the commission of an exceedingly gross and scandalous fraud by which she acquired title to all her mother's real estate. The exact nature of this fraud is distinctly specified in the bill and is of a common type, viz., the procurement by undue influence of a conveyance of property from an aged parent whose mind had become impaired by disease to such an extent, in the language of the bill, "as to render her incapable of performing any legal act." This court found this charge not only proved but disproved, and the court of errors and appeals affirmed the finding of facts by this court (at *p. 242*).

The court of errors and appeals, however, reversed the decree of this court dismissing the bill, and by its decision set aside the conveyances to Mrs. Hagen from her mother, Mrs. Telfer, on the ground that those conveyances were infected by the vice of improvidence—a defect which does not necessarily include the slightest tincture of fraud. The error committed by this court seems to have consisted in declining to consider a ground for

setting aside the conveyances which was not set forth in the bill of complaint, and was not made the subject of any argument but was exhibited in the evidence. The bill of complaint in this cause does not allege that the property donated comprised all or practically all Mrs. Telfer's estate, or that there was no power of revocation reserved in the conveyances, or that the conveyances were made without independent and impartial advice. For all that appears in the bill, Mrs. Telfer might have had a large fortune invested in mortgages, stocks and bonds, compared with which the lands conveyed to Mrs. Hagen were of very small value.

If the conveyances had been attacked in the argument on the ground of improvidence under "the rule of independent advice," no doubt the court would have suggested the propriety of amending the bill of complaint, a course which has been followed in several recent cases where precisely the same situation was presented. The conclusion reached in this court (at *p. 240*) was that "the complainant's case stands on the allegations of the bill that the deeds were obtained by fraud, undue influence," &c., and that therefore (at *pp. 241, 242*) the inquiry was not as to whether the conveyances "were in fact wise and prudent transfers of property, * * * or whether if Mrs. Telfer had been properly advised and aided by counsel she would have made these conveyances." The court of errors and appeals holds that this was an erroneous view. Whether the learned judges of the court of errors and appeals had their attention called to the precise issues presented by the pleadings, or whether they understood that the exclusion of the question of improvidence from consideration by this court was based upon the state of the pleadings, rather than the state of the evidence, it is not necessary to surmise. The point which is important for present purposes is that the vindication of the defendant Mrs. Hagen from the charge of fraud by the decision of this court was not disturbed, but, on the contrary, was affirmed by the opinion of the court of errors and appeals reversing the decree of this court.

The slightest reflection will show that the action of a court of equity in setting aside a deed of gift on the ground that (1) a fiduciary relation existed between the donor and the donee, and

(2) that the conveyance was of substantially all the donor's property so as to leave the donor unprovided for in respect of the future, and (3) that the conveyance was made without any reservation of a power of revocation, and (4) that in making it the donor did not have "the benefit of proper independent advice," differs very widely in character from the action of a court of equity in setting aside a deed of gift on the ground of fraud in its procurement perpetrated by the donee. In the one case, the fraudulent conduct of the donee avoids the deed; in the other case, the improvident conduct of the donor in which the donee may not have participated, and of which he may have had no notice, constitutes the fatal defect. In this case, according to the undisturbed finding of facts in this court, the whole improvident project which Mrs. Telfer undertook to carry through was the product of her own mind—an entirely sane, competent mind. Mrs. Hagen hesitated to accept the donation which her mother desired to make.

In this case, and I think in all cases where a deed of gift is set aside as improvident under the "rule of independent advice," where the donee has taken no part in the procurement of the deed, the only wrong of which the donee can be guilty must consist of an inequitable retention of title after he has received notice of the facts which make the title void or voidable as to the donor or his heirs. The improvident deed may be ratified by the donor or his heirs. In this case, the donee accepted the gift with reluctance, recognizing fully the moral obligations imposed upon her under the peculiar circumstances of the case. In view of the fact that these conveyances to the daughter effectuated the plan which the donor herself formed for the application of her little estate to the support of her daughter and her spendthrift son, it seems to me that it would be very harsh to hold that the daughter, the donee, is to be charged with fraudulently remaining in possession under the conveyances made to her because she did not at once perceive the weakness of her title which apparently was not perceived by any of the parties interested until the case was subjected to a new analysis in the court of errors and appeals. Mrs. Hagen naturally resented the gross charge of fraud

made against her in the complainant's bill of complaint, and defended herself successfully against that charge. Even if her counsel had discovered, or ought to have discovered, that there was within the allegations of the bill or within the proofs a basis for an entirely different attack upon the validity of these conveyances which involved no charge of fraud whatever in their procurement, the question still remained for judicial investigation whether Judge Paxton was or was not an independent and impartial adviser.

It seems to me that down to the time when the law of this case upon the pleadings and proofs had been finally settled by the court of errors and appeals, Mrs. Hagen's possession of the land which she thought her mother gave her for reasons which her mother deemed good and sufficient, ought not to be regarded as tainted with the slightest degree of fraud. Probably most right-minded people would consider that Mrs. Hagen was performing a perfectly plain, moral duty in respecting the wishes of her deceased mother with regard to the land in question until by the judgment of a court of competent jurisdiction the carrying out of that plan became impracticable. Is it possible that Mrs. Hagen is to be penalized or to be charged with fraud of any kind because she did not, with the advice of her counsel, take the place of the court of errors and appeals and adjudge that the conveyances which her mother made to her were void, and thereupon, in flagrant violation of her mother's wish and will, deliver up one-half of the property to be squandered by this unfortunate spendthrift and drunkard?

The foregoing considerations, I think, dispose of the first exception to the master's report. Mrs. Hagen's possession of the land in question was not of such a character as to make her chargeable for the rental value of the portion of the house which she did not occupy, from which she received no rent, and which she kept vacant in the hope that her unfortunate brother would find it convenient to occupy the same.

The other exceptions to the report which are not sustained do not, I think, call for extended discussion. The complainant, with the aid of her husband, endeavored, I think, to render a fair ac-

count. The account set forth her receipts and disbursements in respect of the property, and the accountant swore that it was correct. In large numbers of instances where exceptions are taken no effort is made to show that the repairs and additions mentioned in the account were not in fact made, or that the amount charged for them is excessive; the exceptant contents himself with pointing out that Mrs. Hagen and her husband contradict each other as to who paid the amount of the item. Frequently the names of the parties who did the work or supplied the materials charged for are stated by Mrs. Hagen or her husband, but not one of these parties was brought forward on behalf of the exceptant to contradict the testimony which Mr. or Mrs. Hagen had given. It will be sufficient, I think, for all present purposes, to take up in detail those instances only in which the exceptions are sustained.

The eleventh exception is admitted by counsel for Mrs. Hagen to be in part well founded, that instead of $54 the item should stand at $33.

The thirteenth exception is to the allowance of premiums amounting to $148.16 paid by Mrs. Hagen for insurance policies which she took out in her own name and for her own benefit, and without the knowledge of the complainant. If the buildings insured had burned down no way has been suggested by which the complainant would have received any benefit unless other buildings had been placed upon the land by the insurance companies, or by means of the money paid by the companies to Mrs. Hagen. No authority is cited to sustain such an allowance. The authorities seem to be the other way. *17 Am. & Eng. Encycl. L. (2d ed.) 696; Pickering* v. *Pickering, 63 N. H. 468; 3 Atl. Rep. 744.*

The fourteenth exception is sustained. It relates to fees amounting to $155.55 for collecting rents alleged to have been paid by Mrs. Hagen to her husband, her co-defendant in this case. It is unnecessary to decide that if this property had been so situated that an owner like Mrs. Telfer would naturally have required the services of an agent to take charge of her property and collect the rents, the regular percentage charged by the agent

would not be a proper item for allowance in this account. Owners are not allowed to charge in an account like this for services which they have personally rendered. *Switzer* v. *Switzer, 57 N. J. Eq.* (*12 Dick.*) *421, 427.*

The proofs fail to satisfy me that there was any bargain between Mr. and Mrs. Hagen by which he undertook to collect these rents for a percentage or for any remuneration. The indications are that Mr. Hagen collected these rents for his wife gratuitously to save her the trouble of acting for herself, and that this charge in the account for Mr. Hagen's services based on a percentage is an afterthought suggested by the unwillingness of Mr. Hagen to do anything gratuitously for the benefit of the complainant. Mrs. Hagen does not testify in regard to the payment of these commissions to her husband, and Mr. Hagen's testimony is exceedingly unsatisfactory. The payments which he said his wife made to him were made at different times, and the greater part of them may have been made after the decision of this case by the court of errors and appeals.

The fifteenth exception which is to the allowance of $500, the alleged amount of moneys advanced by Mrs. Hagen to her brother from time to time after her mother's death, is sustained. There is no evidence which would warrant the finding that these moneys were paid over on account of rents collected by Mrs. Hagen. Mrs. Hagen's testimony makes such a finding of fact impossible. There are two views which may be taken of the nature of these advances, and whichever of these views is adopted the ascertainment of the amount of the advances and the placing them within the account as stated by the master were entirely beyond the widest possible scope of the order of reference. One view of the nature of these advances is that they were loans. Mrs. Hagen refers to them as money "loaned," and testifies that the complainant always said that he would pay her back. The complainant admits the reception of moneys from his sister of which he kept no account, and he does not seem to indicate whether he considered the advances as loans or gifts. If the moneys in fact were loans it is very clear that the master was not authorized by the order of reference to ascertain the amount of these loans and

state them as a set-off. It is true the order of reference following the usual form directs the master, in taking the account, "to make to both parties all just allowances," but any such allowances must relate to the subject-matter of the accounting which was the "net rents and profits" in Mrs. Hagen's hands. The ascertainment of the amount of a set-off growing out of independent loans made by Mrs. Hagen to her brother involves independent issues which the master had no jurisdiction to try.

The other view of these moneys paid out from time to time by Mrs. Hagen to her brother is that they were contributions for the support of this spendthrift and his family made by Mrs. Hagen in pursuance of the solemn injunction of her mother delivered from her dying bed. If this is the correct view of these payments of money then we have this situation; Mrs. Hagen having received the estate of her mother as a fund from which she may contribute to the support of her spendthrift brother, pays out substantial sums for such purpose, and the beneficiary receives the same. The beneficiary now procures the setting aside of the donation of the fund from which he has received these payments. There seems to be room to argue that this is a case where a voidable conveyance will only be set aside by a court of equity on equitable terms, and that it would be equitable to impose upon the complainant as a condition of granting him relief that he account for and allow to the defendant Mrs. Hagen the moneys which he has received in execution of the donor's scheme which he now elects to have set aside. But the difficulty is that the master was not authorized by the order of reference to recognize or administer any such equity in favor of the defendant Mrs. Hagen. The insurmountable difficulty also exists that neither the master nor this court has the power to impose a condition upon the complainant which he must submit to in order to be able to obtain the relief which the decision of the court of errors and appeals grants him without condition or reservation of any kind. If the defendant Mrs. Hagen expected to be allowed the amount of her *quasi* gratuitous contributions to her spendthrift brother's support in pursuance of her mother's plan which the spendthrift elected to avoid, she should have made her

claim before the court of errors and appeals, and possibly that court might have recognized and enforced it. It seems clear that there is no power in this court to enforce such a claim at this stage of the suit.

The seventeenth exception is taken to the allowance of a large number of small amounts paid by Mrs. Hagen as interest on taxes assessed upon the land in litigation. No reason is shown why Mrs. Hagen should have neglected to pay these taxes when they fell due, and her account seems to indicate that at all times she had rents in her hands sufficient to pay these taxes. The exception, therefore, will be allowed.

The result is that the eleventh exception is in part sustained as above stated, the thirteenth, fourteenth, fifteenth and seventeenth exceptions are sustained in their entirety, and all the other exceptions are overruled.