MUTUAL PAPER COMPANY *vs.* HOAGUE-SPRAGUE
CORPORATION.

Suffolk.   January 7, 1937. — May 25, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Landlord and Tenant*, Extension of lease, Construction of lease, Use of
leased premises by lessee.

A lease, which contained a provision that upon notice "the Lessee shall
have the right to an extension of said term," and an elaborate method
of determining the rent to be paid during the extended period, but
no statement as to the length of the extended term, was construed to
give the lessee a right to an extended term equal in length to the
original term.

A lease of a portion of a factory building providing that the leased prem-
ises should be occupied only for the lessee's "business of paper,"
which business, at the commencement of the lease, did not involve
the use of machinery, was construed, when considered as a whole, to
permit the lessee to install and operate certain machines for the con-
version of paper into boxes.

Statement by PIERCE, J., of general principles of law applicable in the
construction of leases.

BILL IN EQUITY, filed in the Superior Court on September
23, 1936.

The suit was reported by *Weed*, J., for determination by
this court.

*R. Wait*, for the defendant.

*E. O. Proctor*, (*A. Kobrin* with him,) for the plaintiff.

PIERCE, J.   This is a suit in equity brought by the plain-
tiff in the Superior Court, under G. L. (Ter. Ed.) c. 213,
§ 3 (Tenth A), and Rule 101 of the Superior Court (1932),
for the interpretation of a lease where the plaintiff (a cor-
poration) is assignee of the original lessee (a copartner-
ship) and the defendant an assignee of the original lessor.
The plaintiff seeks to know whether it is permissible under
the lease for it to install in the demised premises machinery
for the manufacture of corrugated paper boxes.   The de-
fendant seeks to know whether the option for an extension

contained in the lease is sufficiently definite to be valid and, if so, whether the lease has been extended and for how long a period.   At the trial the case was heard upon statements of material facts made by counsel and the testimony of an officer of the plaintiff corporation.   Such statements of facts with the testimony referred to are incorporated by reference in the "Report of Material Facts and Order for Final Decree" by the trial judge.

The material facts in the report of the trial judge, as to which there is no substantial controversy, are as follows: On January 2, 1934, an indenture of lease was entered into between Hilliard & Merrill Company (a corporation) as lessor, and Nathan Schwartz, Joseph Schwartz and one Rabinowitz (copartners doing business under the firm name of Mutual Paper Company) as lessees.   This lease was executed by the parties thereto on the agreement and understanding that a corporation to be called the Mutual Paper Company was to be organized and that upon its incorporation said partnership, as lessee, would have the right to assign the said lease to such corporation "irrespective of the clause in said lease restricting its assignability."   The corporation (the plaintiff) was formed, and on or about April 1, 1934, all the right, title and interest of said partnership (the lessee in said lease) was duly assigned to the plaintiff.   On or about May 21, 1936, Hilliard & Merrill Company, the lessor in said lease, conveyed to the defendant the realty of which the leased premises are a part, and assigned to it the lessor's rights under the lease.

Under the terms of the lease the plaintiff had the right to an extension thereof, provided notice of its desire for such extension was given.   The plaintiff has duly given notice of its desire for such extension and contends that the giving of such notice extended the term of said lease to December 31, 1939.   On the other hand, the defendant contends that the provision in reference to extension as set forth in the lease is invalid, that the notice of extension given by the plaintiff did not operate to extend the term of said lease, and that therefore the lease terminated by its terms on December 31, 1936.

The plaintiff during its occupancy of the premises has been engaged in the business of a wholesale dealer in, and jobber of, paper, twine and boxes, including corrugated paper boxes. On or about March 28, 1936, the plaintiff decided that it would install and operate certain machinery for the purpose of manufacturing corrugated paper boxes, and accordingly ordered and purchased machinery for such purpose. This machinery consists of one major machine and three smaller ones, and occupies a space on the leased premises of approximately one thousand square feet. It will be operated by about ten persons. The area of the leased premises is approximately seventeen thousand eight hundred square feet. The part not to be occupied by said machinery is to be used in the same manner as the plaintiff has heretofore used it. This machinery is designed only to convert corrugated paper into corrugated boxes of such size as cannot be purchased conveniently and at reasonable cost elsewhere, and its use is intended to be more in the nature of service to customers than an occupation. The plaintiff proposes to continue the purchase of corrugated boxes elsewhere, as heretofore, but it is essential to the plaintiff that in the conduct of its business it be able to convert corrugated paper into paper boxes by means of machinery, for reasons above stated. At the time of execution of said lease, and up to the time of the trial, the plaintiff did not use any machinery in connection with the conduct of its business.

The building in which the leased premises are located is eight stories high. Except for a restaurant and the part used by the plaintiff for the storage of paper, it is used entirely as a manufacturing building. The defendant, the Hoague-Sprague Corporation, itself deals in boxes for packing shoes in shoe factories, and that includes the dealing in corrugated paper boxes incidental to the sale of the shoe boxes themselves. The conversion of corrugated paper into boxes by the plaintiff will not create any nuisance nor will it in any manner depreciate, or create any waste on, the leased premises. At the trial it was agreed that a copy of the lease annexed to the bill of complaint may be con-

sidered as the original. The material portions of the lease are printed in the margin.*

The controversy in this case centers about two questions: (1) whether under the lease the plaintiff has a right to an extension and, if so, for what period of time; and (2) whether under the terms of the lease the plaintiff has a right to use part of the premises for the purpose of converting corrugated paper into boxes by machinery.

The trial judge found that "the 'lessee' purchased three

---

* "Witnesseth: That in consideration of the rent and covenants herein reserved and contained on the part of the Lessee, its successors and assigns, to be paid, performed and observed, the Lessor does hereby demise and lease unto the Lessee the space on the second floor along Boston and Maine tracks from the two hundred and ninth bay to the space occupied by the Hilliard & Merrill Company Carpenter Shop and all space in ell in the rear of restaurant, in each case in the building constructed for a factory and owned by the Lessor at the corner of Eastern Avenue and the Boston and Maine Railroad in the City of Lynn, in the County of Essex and Commonwealth aforesaid. . . . (b) It is further understood that the lessee may build in the demised premises its own offices, partitions and office and factory equipment such as is usually used in a paper company, which may be removed by the Lessee at or prior to the termination of this lease or any extension thereof. . . . TO HAVE AND TO HOLD the premises hereby demised unto the Lessee for the term ending December 31st, 1936, beginning forthwith. . . .

"It is understood and agreed that at the expiration of the initial term of this lease on December 31st, 1936, the Lessee shall have the right to an extension of said term provided the parties are able to agree upon the amount of rent to be paid during such extension by ninety (90) days prior written notice to the Lessor of its desire for such extension, in which event the lessor shall within ten (10) days thereafter designate the amount of rent to be paid during the extended term, which, however, shall not be more than ten per cent (10%) in addition to the rent hereinbefore referred to for the third year of this lease, namely, yearly rent of Four Thousand Six Hundred Twenty Dollars ($4,620) and monthly rent of Three Hundred Eighty-five Dollars ($385), and if the Lessee shall agree to the rent so named, and notify the Lessor in writing of such agreement, all prior to the expiration of such initial term, then the term of this lease shall thereby be extended.

"And the Lessee does hereby covenant with the Lessor, that the Lessee, during the said term and for such further times as it or any other person or persons claiming under it shall hold the said premises or any part thereof, will pay unto the said Lessor the said rent at the time and in the manner aforesaid and will keep all and singular the said premises in such order, repair and condition as the same are in at the commencement of said term, or may be put in during the continuance thereof, reasonable use and wearing thereof and damage by fire or other unavoidable casualty only excepted; and will make good any damage caused by it by misuse of water or steam, or the pipes or fixtures therefor, and will use and occupy the leased premises only for their business of Paper; . . . and will not permit any hole to be drilled or made in the walls, floors or ceiling of the said building, except as may be necessary in connection with the installation of machinery, fixtures, etc. . . . that the Lessor, or its agent may during said term, at seasonable times, enter to view the said premises . . . and may enter said premises to examine any machinery, gas, water or steam pipes, or fixtures, or electric wires or fixtures, and may maintain, repair and protect the same, and may introduce additional pipes, wires or fixtures."

machines and proposed to install them upon the demised premises and operate them in manufacturing corrugated boxes or packing cases from corrugated paper"; that the said machines cost the plaintiff "respectively $2,700, $5,400 and $50"; that the motor for their operation cost $225; "that the parties have never agreed expressly upon any definite period for extension of the term of said lease, nor have they agreed upon the amount of rent to be paid during such extension save so far as such agreement appears in the lease itself, nor did the defendant within ten days after the receipt of said notice 'designate the amount of rent to be paid during such extended term'"; and that the "yearly rental of $5,082 and monthly rental of $423.50 mentioned in said notice is ten percent 'in addition to the rent hereinbefore (in the lease) referred to for the third year of this lease.'" He ruled "1. . . . that the conversion of corrugated paper into corrugated paper boxes or packing cases, at least to the extent of the installation and operation of the machines hereinbefore described, is within the scope of 'their business of paper' as said words are used in the lease, and will not constitute a breach of the 'lessee's' covenant"; and "2. . . . that the provision of the lease relating to an extension of the term thereof is not so indefinite as not to be capable of enforcement, and that in the absence of any express agreement upon any definite period for the extension of the term of said lease and in view of the provisions of said lease with respect to the yearly rentals during the existing term and of the written notice by the lessee to the lessor, a copy of which is attached to the answer, agreeing to pay the maximum yearly rental for such extension named in said lease, the term of said lease has been extended thereby for the further period of one year ending December 31, 1937." At the request of the parties the case was reported to this court upon the agreement of the parties that if the "rulings are correct a decree is to be entered in accordance therewith, otherwise such decree as justice and equity require."

As to the question relating to the plaintiff's right to an extension, the defendant maintains "that the provision in

the lease is too indefinite to be capable of enforcement and that no extension was accomplished by the provision and the letter" of September 21, 1936. The defendant concedes that a general covenant of renewal implies an additional term equal to the first, and upon the same terms, and that "where a lease is silent as to the renewal term a covenant to renew will be construed to require a new lease for the same term as the old." These concessions are in accord with *Cunningham* v. *Pattee*, 99 Mass. 248, *Leavitt* v. *Maykel*, 203 Mass. 506, *Gardella* v. *Greenburg*, 242 Mass. 405. But the defendant contends that "there is no case in our books which suggests that this rule is applicable to extensions and there are many cases which hold flatly that there is a clear distinction between a renewal and an extension."

It is true that in some particulars renewals and extensions have some points of difference. An option for renewal implies the giving of a new lease upon the same terms as the old lease, whereas an option for extension contemplates a continuance of the old lease for a further period. *Klickstein* v. *Neipris*, 283 Mass. 91, 94. In many respects in leases the words "renewal" and "extension" are words of similar import. The use of the word "renewal" alone in a lease provision is not enough to prevent such a provision from being construed as an extension, where the latter result is shown by the circumstances to have been intended by the parties. *Howell* v. *City of Hamburg Co.* 165 Cal. 172. This court has implied in its decisions that a provision for an extension, in legal effect, is similar to a provision for a renewal and contemplates the same terms and stipulations as were embodied in the original lease. *Hildreth* v. *Adams*, 229 Mass. 581, 584. *Hull* v. *Newhall*, 244 Mass. 207, 209. *Shannon* v. *Jacobson*, 262 Mass. 463, 466. *Klickstein* v. *Neipris*, 283 Mass. 91, 94. No reason is perceived why, as in the case of renewals, where no term is named in the extension provision, the extension term should not be the same term as that in the original lease. *Phillips* v. *Reynolds*, 20 Wash. 374. That this principle is applicable to the case at bar is shown by a consideration of the lease

provision that the rent reserved is $4,020 for the first year, payable in equal monthly instalments, $4,320 the second year and $4,620 the third year; and the further provision, "It is understood and agreed that at the expiration of the initial term of this lease on December 31st, 1936, the Lessee shall have the right to an extension of said term provided the parties are able to agree upon the amount of rent to be paid during such extension by ninety (90) days prior written notice to the Lessor of its desire for such extension, in which event the lessor shall within ten (10) days thereafter designate the amount of rent to be paid during the extended term, which, however, shall not be more than ten per cent (10%) in addition to the rent hereinbefore referred to for the third year of this lease, namely, yearly rent of Four Thousand Six Hundred Twenty Dollars ($4,620) . . . and if the Lessee shall agree to the rent so named, and notify the Lessor in writing of such agreement, all prior to the expiration of such initial term, then the term of this lease shall thereby be extended."

It is the rule that provisions of this sort will be construed somewhat strongly against the lessor. *Watts* v. *Bruce*, 245 Mass. 531, 534. If, as the defendant argues, the "extension provision is void for indefiniteness," it is apparent that it must be treated as being nugatory. But it is a principle of construction that a construction rendering a contract valid and enforceable is to be preferred to one giving no effect to it. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 230. *Feigenspan* v. *Popowska*, 5 Buch. 342, 344.

In the original lease in the case at bar there is set forth an elaborate method of determining the rent to be paid during the extended period. It cannot be supposed it was the intent of the parties that, at the end of the original tenancy, both parties would then be free to bargain with reference to a new lease. The use of the words indicating that the lessee had a right to an extension "of said term" would seem to show the intention of the parties that a further term in length equal to the first term was meant. On this branch of the case the defendant cannot prevail, and the plaintiff is entitled to a lease for a period equal to that given by the original lease.

On the second branch of the case, involving the question whether the plaintiff has a right to use machinery on the premises for the purpose of forming boxes from corrugated paper, the defendant contends that the plaintiff is precluded from so doing by the terms of the lease, in which the lessees covenant that they "will use and occupy the leased premises only for their business of Paper." The defendant contends that that provision should be construed to mean that business which was carried on at the commencement of the lease, which business did not involve the use of machinery. In applying the rules of construction to a situation such as is here presented, we should take into account (1) that in arriving at the meaning of the restriction as to use, the whole lease and not single clauses should be considered, *Dexter* v. *Manley*, 4 Cush. 14, 25; *Ginsburg* v. *Jacobson*, 276 Mass. 108, 110; and (2) that doubts as to restrictions are to be resolved in favor of the tenant. *Boston Molasses Co.* v. *Molasses Distributors Corp.* 274 Mass. 589, 594. *Standard Sanitary Manuf. Co.* v. *Hartfield Realty Co.* 284 Mass. 540, 546. In the absence of clear language in the lease indicating a restriction in use, the tenant has a right to use the premises for any lawful purpose for which they are adapted. *Taylor* v. *Finnigan*, 189 Mass. 568, 572. *Barnett* v. *Clark*, 225 Mass. 185, 188. When the lessor cannot show a use of the premises inconsistent with the terms of the lease, the lessee's right of full enjoyment will not be restricted. *Phoenix Ins. Co.* v. *New York & Harlem Railroad*, 59 Fed. (2d) 962, 965 — certiorari denied 287 U. S. 645. In order to establish a restriction, express language or language from which a restriction is clearly implied must be shown, since equity does not favor raising by implication a covenant restraining the beneficial use of property. *Chamberlain* v. *Brown*, 141 Iowa, 540, 547. The force of the defendant's contention, that the lease provision restricted the use of the leased premises to a use such as existed at the commencement of the lease, is lost when other provisions of the lease are considered. It is manifest upon examination of the entire lease that the parties to it contemplated the installation of machinery, or at least, it was provided for, since the lease

gives the plaintiff the right to build "factory equipment such as is usually used in a paper company" and since one of the lessee's covenants was that it would drill no holes in the walls, floors or ceiling of the building "except as may be necessary in connection with the installation of machinery, fixtures, etc."

Without further consideration of the facts as they appear in the record, we think the ruling of the judge, "1. . . . that the conversion of corrugated paper into corrugated paper boxes or packing cases, at least to the extent of the installation and operation of the machines hereinbefore described, is within the scope of 'their business of paper' as said words are used in the lease, and will not constitute a breach of the 'lessee's' covenant," was right; that ruling numbered 2 was incorrect, in that the judge should have ruled that the provision of the lease relating to the extension of the term should be construed as providing for an extension for a three-year period ending December 31, 1939; and that the plaintiff has exercised its right to this extension.

A final decree is to be entered determining and establishing the interpretation of said lease as indicated in ruling numbered 1 of the Superior Court, and in ruling numbered 2 as modified by this court.

*So ordered.*