**In re COUNTRY CLUB ESTATES AT AVENTURA MAINTENANCE ASSOCIATION, INC., Debtor.**

**Bankruptcy No. 96–13315–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Dec. 7, 1998.

Michael J. Getelman, Miami, FL, for U.S. Security.

Brian S. Behar, Behar Gutt and Glazer, Aventura, FL, for Debtor.

## MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION FOR COURT APPROVAL OF REJECTION OF EXECUTORY CONTRACT WITH U.S. SECURITY

ROBERT A. MARK, Bankruptcy Judge.

On May 26, 1998, the Court conducted a hearing on Debtor's Motion For Court Approval of Rejection of Executory Contract with U.S. Security ("Motion to Reject"). At issue is whether the postpetition renewal of the contract between the Debtor and U.S. Security amounted to the continuation of a prepetition contract which remained executory and therefore subject to rejection under § 365 or whether the renewal constituted a new postpetition contract, not subject to rejection in this bankruptcy case. For the reasons set out below, the Court concludes that the renewal of the contract postpetition resulted in the continuation of the prepetition contract. Therefore, it remained an executory contract which the Debtor may reject under § 365 of the Bankruptcy Code.

### I. Factual and Procedural Background

The debtor, Country Club Estates at Aventura Maintenance Association, Inc. (the "Debtor") filed a Chapter 11 petition in June 1996. In October 1995, the Debtor entered into the contract at issue with a security guard company known as U.S. Security ("Security"). The contract has a one-year term, but also provides that the agreement automatically renews on the one-year anniversary for an additional one-year period unless either side provides written notice of an intent to terminate. Neither side provided such notice and thus, the contract automatically renewed in October of 1996, during the pendency of this Chapter 11 case. On September 22, 1997, the Debtor filed the Motion to Reject. The original hearing was postponed and not rescheduled prior to confirmation of the Debtor's Chapter 11 plan in January 1998.

Post confirmation, on May 26, 1998, the Court conducted a hearing on the Motion to Reject and on the objection to claim filed by G–Site, the related Debtor which is administering the unsecured claims under the plan. That objection related solely to Security's claim for services rendered prepetition. Counsel for G–Site failed to appear at the hearing and therefore Security's $18,000 prepetition claim will be allowed.

At issue in the Motion to Reject is the treatment of a claim in excess of $99,000 filed by Security for the alleged postpetition breach of the contract in September 1997. Although the amended proof of claim lists the $99,000 claim as a priority claim, the creditor is actually claiming this as an administrative claim which was not dealt with under the plan. Security's theory is that the contract was a postpetition contract breached by the Debtor, not a prepetition contract which the Debtor may reject.

### II. Discussion

■ The issue presented is whether a prepetition contract which is automatically renewed postpetition is an executory contract subject to rejection under § 365 of the Bankruptcy Code. Although each side cited several cases in support of their positions, none of the cases cited by the parties are on point.[1]

---

1. Security relies on three cases to support its position that the renewal constituted a new postpetition contract. *New York Life Ins. Co. v. Brown*, 99 F.2d 199 (4th Cir.1938); *Bolin Oil Company v. Reliance Insurance Company (In re Bolin Oil Company)*, 51 B.R. 936 (Bankr. N.D.Ohio 1985) (involved postpetition contract, not a renewal); and *In re Petersen*, 110 B.R. 946 (Bankr.D.Colo.1990) (involved new postdischarge agreement between debtor and landlord). The Debtor cites four cases to support its claim that the contract remained executory. *Coleman Oil Company, Inc. v. Circle K Corp., et al. (In re Circle K Corporation)*, 190 B.R. 370 (9th Cir. BAP 1995); *In re New England Marine Services, Inc.*, 174 B.R. 391 (Bankr.E.D.N.Y.1994) (renewed insurance policy treated as separate and distinct postpetition contract where premiums and coverages were different); *In re IML Freight, Inc.*, 37 B.R. 556 (Bankr.D.Utah.1984) (postpetition collective bargaining agreement not subject to rejection under § 365); and *In re Reserve Roofing Florida, Inc.*, 21 B.R. 96 (Bankr.M.D.Fla.1982) (facts unclear as to whether renewal of contract postpetition was automatic or by mutual agreement).

Through independent research the Court has reviewed several other cases reflecting a split of authority. A minority of cases support Security's position. The case most directly supportive is *Birmingham News Company v. Patterson*, 224 F.Supp. 670, 677 (N.D.Al. 1963), which includes the following discussion:

> As a general proposition, the fact that either party to a contract which is for a stated and definite period, coupled with a stipulation for automatic renewal, may unilaterally terminate such contract at the end of the stated period by giving a prescribed notice means that both parties must evaluate their contractual arrangement at the end of the stated period in much the same manner as parties to a contract without a provision for renewal. Should the parties agree to continue their contractual relationship, whether or not on the same terms and conditions, *each additional period would nonetheless constitute a new term, as if a completely new contract were entered into by the parties.* This would not alter the fact that the initial term of such contract was for a definite and fixed period of time. Similarly, if both parties should find the terms of their contract mutually satisfactory so that they remain silent, the continuation of their original contractual arrangement without change makes their original contract no less one with a definite term equal to the initial period. (Emphasis added)

Thus, the court in *Birmingham News Company* holds that a contract for a definite period of time, coupled with an automatic renewal provision and the power of either party to terminate at the end of that definite period is, regardless of a party opting to renew, a contract for a fixed period of time. Any renewal following the initial term is then a fresh contract.

The facts and legal issues in *Birmingham News Company* are far different from those presented here. That case involved a thirty year contract with automatic ten year renewal periods. The issue was a tax issue which required the court to consider whether the contract, with its automatic renewal provisions, had an ascertainable life of thirty years (the original contract term) entitling the taxpayer to take certain depreciation deductions. Thus, despite the general language in its discussion of automatic renewals, the *Birmingham News Company* case is of limited help in analyzing the Debtor's contract with Security in this case.

The majority of the published caselaw holds that there is a continuation of the original contract when a contract is renewed under an automatic renewal clause. Affirming the district court's reasoning, the Fifth Circuit stated in *Gurley v. Carpenter*, 855 F.2d 194, 195 (5th Cir.1988),

> [T]he Mississippi insurance policy with its renewal provision is a continuous policy rather than a sequence of independent policies. This conclusion is drawn because the insurance contract calls for automatic renewal if, by twenty days before the end of the term, the insurer does not notify the insured of its intent to terminate, and if the premium is timely paid.

Several other courts have also found that automatic renewal provisions result in the continuation of the original agreement. *See, e.g., Williams Petroleum Company v. Midland Cooperatives, Inc.*, 679 F.2d 815, 818 (10th Cir.1982) ("Renewal and extension are concepts closely allied to one another, normally involving a continuation of the relationship on essentially the same terms and conditions as the original contract.") *citing Seymour v. Coughlin Co.*, 609 F.2d 346, 350–351 (9th Cir.1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980); *East Bay Union of Machinists, Local 1304 v. Fibreboard Paper Prods. Corp.*, 285 F.Supp. 282, 287 (N.D.Cal.1968), *aff'd mem.*, 435 F.2d 556 (9th Cir.1970); *Mutual Paper Co. v. Hoague–Sprague Corp.*, 297 Mass. 294, 8 N.E.2d 802, 806 (1937); *Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798, 802–803 (Tex.1967); *see also, Ray Larsen Associates v. Nikko America, Inc.*, 1996 WL 442799 (S.D.N.Y.1996) (holding that automatic renewals are not creations of new contracts and do not alter the original date of formation). *quoting, Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 570 (2d Cir.1991) ("Renewal normally involves a continuation of the relationship on

essentially the same terms and conditions as the original contract."); and *United States Aviation Underwriters, Inc. v. Preservatrice–Fonciere Compagnies D'Assurance, No. 83 Civ. 3935*, 1986 WL 3779, at 2 (S.D.N.Y. March 21, 1986) (noting that renewals of insurance contracts are generally viewed "as an extension of the original policy, not a new contract"), *aff'd*, 801 F.2d 391 (2d Cir.1986).

This Court adopts the majority position that a contract which is renewed pursuant to an automatic renewal provision is merely a continuation of the original contract. The result may be different if a contract is renewed with new or modified terms. *See, e.g., Trans–Orient Marine Corp.*, 925 F.2d at 569 (stating offer to renew constituted a new contract since the offer to renew was not made on the same terms as the original contract), *citing East Bay Union of Machinists, Local 1304*, 285 F.Supp. at 287 (holding offer including modified terms is not an offer to renew but an offer to enter a different or new contract). Here, any changes that may apply to the renewal year of the agreement were actually contained in the original contract. Service Agreement, at ¶ 1 (stating "[i]n the absence of such notice, or any consensus as to modifications, the Agreement will automatically renew with an annual service rate increase of no less than five percent (5%)"). No new or modified terms were offered by either party at the beginning of the renewal term. Therefore, the renewal period constitutes a continuation of the original prepetition executory contract and is subject to 11 U.S .C. § 365.

Under 11 U.S.C. § 365(a), subject to court approval, a debtor-in-possession or trustee may "assume or reject any executory contract or unexpired lease of the debtor" that was entered into prepetition. Furthermore, when determining whether or not a rejection is appropriate, the trustee or debtor-in-possession must employ the traditional "business judgment" standard. *In re Gardinier, Inc.*, 831 F.2d 974, 975 fn. 2 (11th Cir.1987). Without serious question, the Debtor properly exercised its business judgment in moving to reject its contract with Security.

For the foregoing reasons, it is—

**ORDERED** as follows:

1. Debtor's Motion For Court Approval of Rejection of Executory Contract with U.S. Security is granted.

2. G–Site's objection to U.S. Security's $18,000 prepetition claim is overruled.

3. U.S. Security shall have an allowed unsecured claim of $18,000 for prepetition services and an additional unsecured claim of $99,000 as rejection damages.

4. U.S. Security's unsecured claims shall be paid in accordance with the Debtor's Chapter 11 Plan.