MARCELLE, INC. *vs.* SOL. AND S. MARCUS COMPANY.

Worcester.    September 24, 1930. — February 24, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Contract,* Construction. *Landlord and Tenant,* Construction of lease,
Assignment, Sublease.

The distinction between an assignment and a sublease of demised prem-
ises is well established: a transfer by the lessee of the whole or a
specific part of the leasehold estate for the residue of the term is an
assignment; a transfer by the lessee of the whole or a specific part of
the leasehold estate for a part of the unexpired term is a sublease.
Per RUGG, C.J.

An instrument in writing entitled "Agreement and Lease" contained
provisions whereby the proprietor of a department store occupying
an entire building let a small portion thereof to the other party to
the instrument for use by the lessee in carrying on his millinery busi-
ness, ostensibly as a department of the lessor's store; and contained
further comprehensive provisions covering in considerable detail the
rights, obligations and conduct of the parties and necessitating close
relations, mutual confidence and harmonious contact between them.
A further provision was that the "agreement cannot be assigned in
whole or part by the lessee" without the consent of the lessor. *Held,*
that

(1) The provision as to assignment, not being restricted to the
mere occupancy of real estate by the lessee, applied to all matters
covered by the instrument;

(2) In the circumstances, in order to effectuate the intent of the
parties, that provision must be taken to include both an assignment
and a sublease;

(3) The lessee was not entitled to sublet without the consent of the
lessor.

The instrument above described further provided that the lessee should
have each week "three . . . days' window display" in a certain win-
dow of the premises. It was agreed, in a suit in equity for construc-
tion of the instrument, that the three days should be consecutive,
the issue being whether the lessee should have the last three days of
each week. *Held,* that

(1) The instrument was not ambiguous, but merely silent, in re-
spect to the particular days to be allotted to the lessee; and for its
interpretation resort could not be had to an interpretation put upon
it by the parties as manifested by evidence that, from its inception
over a period of more than two years, the lessee had had the last
three days of each week;

(2) The lessee was not entitled to such window display on any particular three consecutive days of each week.

The instrument above described further provided that the lessee should hire "competent and high grade employees"; that they should be under the supervision of the lessor, "who shall have the right to immediately dismiss from the lessee's employment any person or persons who shall violate any of the rules and regulations of the lessor's . . . store or whose employment shall prove detrimental to the lessor's business." Upon findings that an employee of the lessee violated certain rules of the lessor and that his whole conduct made his employment detrimental to the lessor's business, it was *held*, that the lessor was warranted in exercising his right to dismiss him from the lessee's employ at the store.

BILL IN EQUITY, filed in the Superior Court on February 10, 1930, described in the opinion.

The defendant filed a cross bill. The suit was heard by *Whiting*, J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material findings by the judge are stated in the opinion. By his order, a final decree was entered as follows:

"1. Under the terms of the lease and agreement in question, the plaintiff has no right to sublet the premises without the written consent of the defendant.

"2. That under the terms of the lease and agreement, the plaintiff has a right to mass display in accordance with the provisions contained in the lease and agreement on Thursday, Friday and Saturday of each and every week during the term of the lease.

"3. That one Herman Shupe in the employ of the plaintiff, violated certain rules and regulations of the defendant and that such violation has made his employment detrimental to the defendant's business and in accordance with section 9 of the lease and agreement, the defendant is warranted in exercising the right to immediately dismiss Herman Shupe from the plaintiff's employment at the store of the defendants."

Both parties appealed.

*S. A. Seder*, (*S. Lurier* with him,) for the plaintiff.

*A. M. Hillman*, for the defendant.

RUGG, C.J. This is a suit under St. 1929, c. 186, for a decree interpreting a written "Agreement and Lease" be-

tween the parties. The defendant filed a cross bill. At the trial in the Superior Court and at the argument in this court, no questions were raised by either party relative to pleadings, to procedure under said c. 186, or to the right of the court to determine the issues raised. The case is considered on the footing presented by the parties and no other questions have been regarded.

The trial judge made findings of fact in writing. Thus it appears that there are three matters in controversy. The first is whether the plaintiff has the right to sublet. The facts pertinent in that connection are these: The defendant is the lessee of an entire building, several stories in height, in the part of Worcester devoted to retail trade, which it uses for conducting the business of selling furs, clothing and other allied articles. In September, 1927, the parties executed a contract in writing entitled "Agreement and Lease." It related to carrying on a millinery business within the defendant's building. Ostensibly and so far as concerned the public, this was to be carried on by the defendant as a department of its business, although in truth it was to be the business of the plaintiff. This department occupied a relatively small portion of the store of the defendant. As a part of the agreement, the plaintiff was given a lease of the portion to be occupied by it. The title of the document signed by the parties is not without weight. It was not merely or chiefly a lease. It was primarily an agreement establishing a commercial relationship of some intricacy and importance to both parties. It was a comprehensive instrument covering in considerable detail the rights, obligations and conduct of the parties concerning the business to be undertaken by the plaintiff within the larger store of the defendant. It is obvious, from the terms of the agreement and lease and from the situation of the parties, that necessarily their relations must be close and intimate and involve no small degree of mutual confidence and harmonious contact. It is provided in the agreement and lease, in paragraph 15, that " This agreement cannot be assigned in whole or part by

the lessee without the written consent of the lessor," and, in paragraph 27, that "This lease and all the covenants hereunder shall bind the lessor and its successors in title, and shall bind any and all assignees of the lessee provided the lessor shall first have given its written approval to any assignment made or attempted to be made by the lessee herein."

The distinction between an assignment and a sublease of demised premises is well established. A transfer by the lessee of the whole or a specific part of the leasehold estate for the residue of the term is an assignment. A transfer by the lessee of the whole or a specific part of the leasehold estate for a part of the term is a sublease. Even if the instrument be in the form of a sublease, it will operate as an assignment if the whole estate is conveyed. *Patten* v. *Deshon,* 1 Gray, 325, 330. *McNeil* v. *Kendall,* 128 Mass. 245, 251. *Dunlap* v. *Bullard,* 131 Mass. 161, 163. *Essex Lunch, Inc.* v. *Boston Lunch Co.* 229 Mass. 557, 559. It is not necessary to consider whether a covenant against assignment without consent of the lessor in the ordinary lease permits a sublease in its strict sense. If that be assumed to be the law, we are of opinion that that principle is not applicable to the case at bar. The agreement and the lease are incorporated in the writing. The lease was for a specific purpose, the fulfilment of which was inextricably bound together with the assurances secured by the contract touching general and particular aspects of the retail trading adventure. It would be inconsistent with several clauses of the instrument to permit the plaintiff to sublet the portion of the defendant's store described in the lease. Such a sublease would be equivalent to a refusal by the plaintiff to go on with several essential features of the contract. *R. H. White Co.* v. *Remick & Co.* 198 Mass. 41. The agreement and lease signed by the parties manifestly is much more than a lease in the ordinary significance of that word. It is an instrument designed to regulate, so far as reasonably might be foreseen, the manifold relations and points of

possible friction arising out of the inevitably close physical situation between the business of the plaintiff and the business of the defendant.   The intent of the parties, as gathered from the document as a whole, forbids the idea that anybody could be permitted to take the place of the plaintiff in whole or in part in its relations to the defendant without the consent of the latter.   The first provision on this general subject is that the agreement cannot be assigned without the consent of the defendant.   That clause plainly includes all the business matters of every nature covered by the written instrument.   It is not restricted to that part touching the occupation of real estate. In this connection it is not employed to express obligations confined to the law of landlord and tenant, but embraces all the duties, obligations, privileges and relations within the scope of the agreement and lease.   The subsequent use of the word "assignment" in the agreement and lease, read in the light of the circumstances of the parties and the main purpose to be accomplished, requires that it be given a meaning sufficiently comprehensive to include both assignment and sublease in their technical signification as applied to the part of the agreement and lease relating to real estate.   In no other way can the manifest intent of the parties as disclosed by the writing in its entirety be given effect.   To ascertain and effectuate the intent of the parties as manifested by the words used and the object to be accomplished is the goal of all interpretations of written agreements.   *Eustace* v. *Dickey,* 240 Mass. 55, 72.   *Erickson* v. *Ames,* 264 Mass. 436, 444. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 112. *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138, 141.

The conclusion on this branch of the case is that the plaintiff cannot sublet to another the premises in question without the written consent of the defendant.

One paragraph of the agreement and lease is in these words: "The lessor shall grant the lessee display in the show windows of the lessor for the purpose of displaying

the merchandise of the lessee. Such window display is based on the following agreement, to wit: that the lessee shall have three (3) days' window display in the front portion of the southeast window to a depth of not less than seven (7) feet, and the width across the entire window south to north, and for the other four (4) days of the week the lessee shall have the right to show no less than fifteen (15) hats in the show windows of the lessor, equally distributed throughout the windows so as to be easily seen by the public in the aforesaid show windows. During the three (3) days that the lessee controls the space allotted in the front show window the lessee shall allow the lessor or other departments to display in the space allotted to the lessee such articles as gloves, cosmetics, hosiery, and small articles of art and leather goods, but the lessor however, shall exercise this privilege in a very reasonable manner and shall not flood the space allotted the lessee but shall in incorporating these minor articles do so as to make it especially attractive to the lessee as well as the lessor." The controversy arising under this paragraph is whether the plaintiff is entitled to the last three days of each week for window display. It was conceded that the three days should be consecutive. From the beginning of its occupancy to the early part of 1930, the plaintiff had Thursday, Friday and Saturday of each week (with a single exception consented to by it and not here material) for mass window display.

The contract is not ambiguous, it is simply silent touching the subject of the particular days to be allotted to the plaintiff. Whether by accident or design, the parties failed to insert in their agreement any stipulation on this matter. The court cannot supply a deficiency of that nature. It can only interpret the contract as made by the parties. The same principle applies as respecting a *casus omissus* in a statute. *Arruda* v. *Director General of Railroads,* 251 Mass. 255, 263. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 114. The contract is clear on this point. There is no room for the construction of doubtful words,

for there are no words whatever.   In these circumstances resort cannot be had to evidence of the interpretation put upon the contract by the acts or conduct of the parties. It is only in instances where words or phrases of equivocal import have been used that recourse may be had to evidence of that nature.   *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 386.   *Foster* v. *Lee,* 271 Mass. 200, 205.   Compare *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, 398.   The mere use by the plaintiff on certain days of each week for something over two years is not evidence of a construction placed upon an ambiguous contract, because the contract was not ambiguous.   The case on this point is distinguishable from *New York Central Railroad* v. *Stoneman,* 233 Mass. 258, 262, where conditions and circumstances under which the contract was made illuminated a doubtful provision.   There is no finding in the present case that the written agreement and lease had been made complete in the particular in which it was deficient by subsequent oral or written arrangement between the parties.   Therefore, *Mark* v. *Stuart–Howland Co.* 226 Mass. 35, 45, 46, and *Rome* v. *Johnson, ante,* 444, are not pertinent.   For aught that appears, the regularity of use may have resulted from allotment by the defendant of days for mass display by the plaintiff, or there may have been an initial temporary arrangement, continued without further discussion or stipulation, or there may have been some tacit understanding.   However that may be, the ruling on this point was erroneous to the effect that, in view of the concession of the parties that the three days were to be consecutive and " the construction heretofore placed by the parties on this provision," the plaintiff was entitled to mass window display on Thursday, Friday and Saturday; the defendant, on Sunday, Monday, Tuesday and Wednesday.

The third issue between the parties is whether the defendant has the right to require the dismissal of one Shupe, an employee of the plaintiff.   That arises under

paragraph 9 of the agreement, which is in these words: "The lessee agrees that all employees employed in its department shall be contracted for with the lessee, who shall in turn pay a weekly or monthly salary agreed upon, to the aforesaid employees. The lessee covenants to retain competent and high grade employees to manage and operate its department. All such employees, however, shall be under the supervision of the lessor who shall have the right to immediately dismiss from the lessee's employment any person or persons who shall violate any of the rules and regulations of the lessor's department store or whose employment shall prove detrimental to the lessor's business. The employees of the lessee shall be obligated to conform to all the rules and regulations established or enforced, or to be established in connection with the general conduct of the lessor's department store business." On this matter the finding of the trial judge was that Shupe was employed by the plaintiff and violated certain oral rules and regulations of the defendant, and that the manner of these violations taken in connection with his acts, statements and conduct has made his employment detrimental to the defendant's business. The evidence on which this finding was based is printed as a part of the record. It has been carefully examined and weighed. It need not be summarized. It is enough to say that it supports the finding. *Lindsey* v. *Bird,* 193 Mass. 200. *Kelly* v. *Burlingame,* 269 Mass. 122. The case at bar is distinguishable from cases like *McIntosh* v. *Abbot,* 231 Mass. 180.

It is not necessary to recite the substance of the requests for rulings presented to the trial judge by the plaintiff. There was no error of law in the denial of them. They all are disposed of by what has been said.

No interlocutory decree was entered and the several appeals therefrom need not be considered.

The final decree is modified by striking out the second paragraph and inserting in place thereof words in substance to the effect that under the terms of the agreement

and lease the plaintiff has no right to mass display in the window on any particular three consecutive days of each week, and as thus modified is affirmed with costs.

*Ordered accordingly.*