DIANA STRATIS *vs.* McLELLAN STORES COMPANY.

Essex.    May 4, 1942. — May 26, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Workmen's Compensation Act,* Employee of independent contractor. *Contract,* Construction, "Concession" agreement.

The provisions of a certain "concession agreement" between two corporations, each insured under the workmen's compensation act, one operating a retail department store selling general merchandise and the other conducting a luncheonette within the store, placing upon the concessionaire sole responsibility for the conduct of the luncheonette business, including hiring of employees, purchasing and sale of merchandise and indemnity of the store corporation with respect to the business, with certain supervisory and regulatory rights in the store corporation intended to avoid friction and to preserve harmony between the parties, showed that the business of the concessionaire was separate and "no part of" the business of the store corporation so that one of the employees of the concessionaire was not prevented by § 18 of G. L. (Ter. Ed.) c. 152, as amended, from maintaining an action at common law against the store corporation for injuries caused by a defective stairway on its premises.

TORT. Writ in the District Court of Southern Essex dated July 27, 1939.

The case was heard by *Foley*, J.

*E. H. Borofski*, for the plaintiff.

*J. A. Donohue*, for the defendant.

Cox, J. The plaintiff brought an action of tort against the defendant to recover damages for personal injuries sustained on December 8, 1938, as the result of a fall on a stairway on the defendant's premises and within its control. The judge of the District Court found for the plaintiff, denied certain requests of the defendant for rulings, and ruled that the plaintiff was not precluded from recovering by reason of the provisions of G. L. (Ter. Ed.) c. 152, § 18. Upon report, the Appellate Division found that there was prejudicial error in the denial of the defendant's third request and in the ruling that the plaintiff was not precluded from recovery under said § 18, and ordered the finding for the plaintiff vacated and that judgment be entered for the defendant. The plaintiff appealed. No question is raised as to the plaintiff's right to recover if the provisions of said § 18 are not applicable. The question to be decided depends upon the interpretation of a written instrument entered into between the defendant and the A. & S. Luncheonette, Inc., hereinafter referred to as the concessionaire, as that instrument is modified, if at all, by oral evidence and a stipulation of agreed facts entered into at the trial "to be considered in determining the rights of the parties."

There was evidence that the plaintiff was employed not by the defendant, but rather by the concessionaire; that she was hired by the latter's manager and was paid by it; that the defendant was a department store selling a general line of articles and merchandise to the public, and that food and soft drinks were sold in the store by the concessionaire "under a lease, from the defendant." It was agreed, among other things, that the plaintiff was employed by the concessionaire, "who hired space from the defendant in . . . [its] store"; that the concessionaire "hired and fired its own employees"; that the concessionaire and the defend-

ant each carried insurance on its employees in accordance with the workmen's compensation act; that such insurance was in effect at the time of the plaintiff's injuries; that the defendant and the concessionaire paid their own premiums for such insurance; that the plaintiff did not reserve her common law rights under G. L. (Ter. Ed.) c. 152, § 24; and that the arrangement between the defendant and the concessionaire is set forth in a written agreement, called a "Concession Agreement," which is attached to the report. The requests for rulings that were denied and that have been argued are: "1. As a matter of law the plaintiff cannot recover in this action. . . . 3. A finding that the defendant was a general contractor and the . . . [concessionaire] an independent or subcontractor within the provisions of Section 18 of Chapter 152 of the General Laws is legally warranted on the evidence."

The. defendant states that the only question raised on this appeal is whether the plaintiff can maintain her action at common law and that these requests were designed to raise this question. It contends that whatever legal rights the plaintiff has are contained in and restricted by the provisions of §§ 15 and 18 of said c. 152, and that inasmuch as the defendant is not a "person other than the insured," within the provisions of said § 15, this action cannot be maintained.

Said § 15 of said c. 152 (see now St. 1939, c. 401) in force at the time the plaintiff sustained her injury, provides, among other things, that where the injury for which compensation is payable was caused under circumstances creating a legal liability in "some person other than the insured" to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the insurer for compensation under said chapter, but not against both. Section 18 of said c. 152, as amended by St. 1938, c. 102 (see now St. 1939, c. 93), provides, among other things, that if an insured person enters into a contract, written or oral, with an independent contractor to do "such person's work," or if "such a contractor" enters into a contract with a sub-

contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter, "if the independent or subcontractors were insured persons." It is further provided that this section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to and is no part of or process in, the trade or business carried on by the insured. (See generally as to §§ 15 and 18, *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, and cases cited; *Carlson* v. *Dowgielewicz,* 304 Mass. 560; *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150.)

The "Concession Agreement" was entered into on May 19, 1936, and the plaintiff sustained her injuries on December 8, 1938. At the very beginning of the agreement, the defendant "does grant unto the" concessionaire, "hereinafter designated as 'Licensee', . . . a license and concession to install and maintain in space to be designated by the . . . [defendant] in . . . [its] store . . . a luncheonette and soda fountain, with appurtenances thereunto belonging." The concession "shall be operated only as a luncheonette and soda fountain and all sales made in such concession shall be for cash only." The concessionaire is to operate and maintain the concession in a first class manner "at its own expense as a concession therein during the term hereof, employing suitable number of employees who shall be subject to the approval of the" defendant's manager, and "maintaining a suitable amount of merchandise at all times." All furniture, fixtures and equipment used in connection with the concession are the property of the concessionaire, except such as are enumerated in an inventory annexed to the agreement as belonging to the defendant.

Before proceeding to state and discuss other provisions of the agreement, it may be well to observe that agreements of this general character are nothing new. As far

back as 1904, this court had occasion to consider an agreement whereby a department store in Boston granted to another the exclusive license and privilege of selling and dealing in sheet music, and for no other purposes, "within the premises" of the store for a definite term, the location to be assigned.  See *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 43; *Wasserman* v. *Hollidge,* 267 Mass. 460, 462, 463; *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469; *William Cohen Shoe Corp.* v. *Hickson, Inc.* 286 Mass. 513; *Belvedere Hotel Co.* v. *Williams,* 137 Md. 665; *Deluise* v. *Long Island Railroad,* 65 App. Div. (N. Y.) 487; *Nash* v. *Thousand Island Steamboat Co.* 123 App. Div. (N. Y.) 148; *Milwaukee Boston Store* v. *Katz,* 153 Wis. 492; *Mehlman* v. *Atlantic Amusement Co.* 65 Misc. (N. Y.) 25; *Warren* v. *Topeka,* 125 Kans. 524; *Beckett* v. *City of Paris Dry Goods Co.* 14 Cal. (2d) 633; *Gerould Co.* v. *Arnold Constable & Co.* 65 Fed. (2d) 444; *In re Owl Drug Co.* 12 Fed. Sup. 439.

In many of the reported cases, including most of those hereinbefore cited, the question has been whether the agreement that was considered constituted a lease and, perhaps, something more, or a license.  In the *R. H. White Co.* case this court, very briefly and without citation of authority, held that the agreement there was not a lease but a license, and that the use of those terms which are appropriate and common in leases cannot change the real nature of the agreement in that respect.  (See page 46.) The cases generally recognize the distinction between a lease and a license as stated in *Jones* v. *Donnelly,* 221 Mass. 213, where, at page 217, the language in *Lowell* v. *Strahan,* 145 Mass. 1, is quoted: "Every license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further.  A lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms."

The cases hereinbefore cited do not all reach the same conclusion, depending in the main upon the facts, but in the case of *In re Owl Drug Co.* 12 Fed. Sup. 439, where the

agreement there under consideration contained many of the provisions of the agreement in the case at bar, to which reference is about to be made, it was decided that the relationship between the parties was that of landlord and tenant. We are of opinion, however, that it is unnecessary to determine whether the agreement amounts to a lease or a license. If it should be said that it was a lease, it is apparent that it is more than that and amounts to an agreement establishing a commercial relationship of some intricacy and importance to both parties, covering in considerable detail the rights, obligations and conduct of the parties concerning the business to be undertaken by the concessionaire within the store of the defendant. *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 471. It is necessary to ascertain and effectuate the intention of the parties to the agreement as manifested by the words used and the object to be accomplished, and, in doing so, precise words of characterization used by the parties as to their relationship are not conclusive. Unquestionably, the defendant was an insured person within the meaning of § 18 of said c. 152; it entered into a contract with the concessionaire, and it is for us to determine whether that contract was to do the defendant's work. G. L. (Ter. Ed.) c. 152, § 18, as amended.

The agreement requires the concessionaire to pay all wages and compensation of its employees as well as for all merchandise, fixtures and goods "for said concession," to pay any and all expense, fines and judgments against it arising in connection with the installation, operation and maintenance, for gas used in connection with the concession, and the defendant is to be under no liability for any failure or interruption in the supply of water, gas, electricity or heat. The concessionaire is required to pay for policies of insurance covering it for public liability, "products liability" and workmen's compensation, "including the name of the . . . [defendant] therein as an assured, if requested by it," and to pay charges, levies, licenses and taxes upon its "business, goods, fixtures and merchandise, and the sales, income and receipts from said concession." It further provides that neither "this contract nor any interest therein,

nor the income or proceeds from said concession, shall be assigned, mortgaged, pledged or hypothecated without the written consent of the" defendant; that all displays, signs, arrangements of merchandise, advertising matter, and the amount of stock to be carried "in and about the said space" shall be subject to the approval of the defendant. All goods sold in, and the manner, times and hours of operating the "said concession" are to be in accordance with all provisions of law. The concessionaire is required to make reasonable adjustments of complaints "with customers, the . . . [defendant's] store manager to be the sole judge thereof," and the concessionaire assumes all liability for claims and demands of its "patrons, invitees, employees, servants, [and] agents." It is required to observe all reasonable rules and regulations of the defendant in respect "of the proper conduct of Licensee, Licensee's employees, servants and agents, and of the concession and . . . [the defendant's] retail business." It is to make no alterations in "said space" without the defendant's written consent, but the defendant may make repairs in "said space" and may remove the concession to other space in the store from time to time. Provision is made, in the event of default or breach by the concessionaire, or if it abandons or fails to operate the concession or becomes insolvent or bankrupt, that the defendant may, at its election, "terminate" the contract, and that it may "operate," until the concessionaire's goods and effects are removed "from the space, the said concession as the agent of, and for the account of," the concessionaire. Unless the agreement is terminated for breach, it is to continue for one year from date, but in no event beyond the date that the defendant's lease of the premises shall come to an end for any reason. It is provided that nothing contained in the agreement shall be deemed or construed to create any partnership or joint venture between the parties, nor to create any interest in the concessionaire as a "tenant in the said space," nor any relation of principal and agent, nor the relation of master and servant. The concessionaire is required to deposit all proceeds from the concession in the defendant's cash regis-

ters, and the defendant "daily will pay to the . . . [concessionaire] therefrom Eighty-eight per cent (88%) thereof." The defendant may require the concessionaire to operate the cash register, but it is "understood that . . . the sums deposited therein shall be the property of the . . . [defendant] subject to distribution by . . . [it] as hereinabove provided." The concessionaire agrees to obtain in its name "(and/or in the name of the . . . [defendant], if it so requests) all licenses and permits necessary to install, operate and maintain the concession . . . and exhibit same at any place in the said store designated by the" defendant. "Should the . . . [defendant] at any time have a license or permit" except for which the concessionaire would be required to obtain one, the concessionaire agrees to pay the defendant as a part consideration "herefor" a sum equal to the cost of the license or permit that the concessionaire would be required to obtain. The concessionaire agrees that all of its merchandise, goods and effects shall be in the store at its sole risk and peril, and that the defendant shall have no liability or obligation by reason of any damage or destruction to the same by any cause whatsoever, or for any theft, pilferage or conversion. If any claim or demand is made against the defendant, or any action is brought arising in connection with the "operation of said concession," the concessionaire agrees "to indemnify, hold and save" the defendant "free and harmless" from and against any damage resulting to it. If any legislation is enacted, "whereby in order to maintain or operate the concession aforesaid the same must be segregated from the balance of the . . . [defendant's] store, or be separately partitioned, or otherwise be conducted in such a manner that it must be a separate unit, then and in any such event this agreement shall cease," subject to notice if such legislation provides for time within which to comply therewith. All merchandise shall be subject to checking by the defendant, and it may inventory the concessionaire's merchandise at any time. Employment of employees not acceptable to the defendant, and those who, in the defendant's judgment, are incompetent, shall cease immediately upon the defendant's request.

There are other provisions of the agreement, besides those that have been referred to, which it does not seem necessary to mention specifically.

The defendant contends that the effect of the agreement is that the concessionaire undertook to carry on a part of the defendant's business, and that, accordingly, the plaintiff cannot prevail.  There was evidence that the defendant is a department store, selling a general line of articles and merchandise at retail.  Nothing further is disclosed as to the nature of its business beyond the fact that it owned certain fixtures, including a gas range, steam table, sinks and a few other appliances that might be used for the purpose of preparing and keeping food.  It does not appear that it ever operated a luncheonette or that it ever sold food or soft drinks such as are sold by the concessionaire. In other words, if it can be said that it is not now uncommon for department stores to sell food and drinks, nothing more appears than has already been referred to to indicate that the defendant had ever done so.  Whatever may be the precise relationship between the concessionaire and the defendant, it seems apparent from the terms of the agreement and from their situation that that relationship must be close and intimate, and involves no small degree of mutual confidence and harmonious contact, and also that the agreement is designed to regulate, in so far as reasonably might be foreseen, the many relations and points of possible friction arising out of the inevitably close association between the operation of the concession by the concessionaire and the business of the defendant within the latter's store.

The concession, by the terms of the agreement, was to be installed and maintained in a space to be designated by the defendant, although the defendant could remove it to other space in the store from time to time.  It seems apparent that the defendant, so far as the public was concerned, was desirous of having it appear that it was operating the concession (see *Barron* v. *McLellan Stores Co.* 310 Mass. 778, 782), although it was careful to provide that licenses and permits that the concessionaire agreed to obtain were to be exhibited at any place in the store that was

designated by it. The concessionaire was responsible for the wages of its employees. It was required to pay for its fixtures and supplies, and all of its goods and effects in the store were there at its sole risk and peril. The defendant contends, however, that the provisions of the agreement relating to the employees of the concessionaire, as well as those relating to advertising and the amount of stock to be carried, and others indicate a control of the concession that is consistent only with the conclusion that it was being operated by the concessionaire not upon its own account, but as a part of the defendant's work or business. But we are of opinion that these provisions are not inconsistent with the conclusion that the concessionaire was carrying on its own business within the store of the defendant. *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 471. We construe these regulatory provisions as being consistent with the peculiar relationship between the parties arising out of the fact that the concessionaire's business was to be conducted within space allocated to it by the defendant in the latter's store, and that they were designed to prevent possible friction.

The point is made that a provision in the agreement as to the control of all moneys received from sales is an indication that the business of the concession was intended to be, in fact, the business of the defendant. We do not so regard this provision. On the contrary, we consider it first as containing a provision for payment by the concessionaire for its right to operate the concession, and second, as an indication that the defendant was taking no chances of not being paid. When the question has to be decided whether a person is a servant or employee or an independent contractor, the method of payment is not controlling, although it may be important. *McDermott's Case*, 283 Mass. 74, 76. *Parker* v. *Taylor*, 295 Mass. 51, 54.

Again, it is contended that the provision in the agreement relative to the right to terminate it in the event of any legislation "whereby in order to maintain or operate the concession . . . [it] must be segregated from the balance

of the . . . [defendant's] store, or be separately partitioned, or otherwise be conducted in such a manner that it must be a separate unit," indicates that the parties to the agreement intended that the defendant was operating the concession and that the concessionaire was actually doing the work of carrying it on. We do not so regard this provision. We may well assume that the defendant desired to have it appear to the public that it was operating the concession. Its purpose in this respect would be defeated if the appearance of things had to be so changed that the public would know that it was not, in fact, operating the concession. We think that this provision was inserted for this purpose, and that it does not support the contention of the defendant.

Running through the agreement references are found to the concessionaire's "business, goods, fixtures and merchandise," and its "patrons, invitees, employees, servants, agents." Nowhere is there any reference to the concession as being a part of the defendant's business. Nowhere is there any suggestion that the defendant was to be responsible for any losses that the concessionaire might sustain in operating its business.

The agreement carefully attempts to provide that it shall not be construed as creating any partnership or joint venture, tenancy, or the relationship of principal and agent or master and servant. The only attempt to say what the relationship is specifically is found in the provision that the concessionaire is granted a license and concession to occupy space to be designated in the defendant's store for a limited purpose and for a substantially definite time. It can hardly be contended that, because the parties provided that payment for the concession was to depend upon the sales, the grant of the license and concession is an agreement on the part of the concessionaire to do the work of the defendant. The defendant, by the terms of the agreement, undoubtedly has surrounded itself with a protective armor. In fact, the agreement, in so far as the rights of the concessionaire are concerned, is not unlike, in many respects, the rights of a tenant under what is sometimes called a landlord's lease.

But when the situation of the parties is taken into consideration, as well as the apparent purpose of the defendant as to the appearance of things, the requirements imposed upon the concessionaire appear to be necessary if friction is to be avoided and harmony preserved between the parties. The supervisory powers retained by the defendant were not of such a nature as to deprive the concessionaire of the right at least to occupy a definite part of the store, subject to change, of which it could not be deprived except for a breach of its agreement or the happening of certain events. Neither did these supervisory powers prevent the concessionaire from operating its own business.

One factor to be borne in mind in determining the relationship created by the agreement is the circumstances under which it was made. Restrictions as to rights that do not affect its fundamentals should not be interpreted as destroying the relationship. Illustrations of this may be found in the multiple restrictions that may be imposed upon tenants where the vital question, in determining whether a lease exists, is whether the tenant has possession of the premises as against the world, including the owner. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402, 406. In the case at bar, the mere fact that the agreement is full of restrictions as to what the concessionaire may, more particularly what it may not, do, so long as these restrictions merely relate to methods of conducting the business and do not destroy the business as that of the concessionaire, does not place the case beyond this fundamental rule.

We have found it unnecessary to take into account the evidence of the defendant's manager that the concessionaire sold food and soft drinks under a lease, or the statement in the agreed facts that the concessionaire hired space from the defendant in its store, and "hired and fired" its own employees. We are of opinion that the construction of the concession agreement itself is such that there was no error in the denial of the defendant's requests, and that the agreement provides that the concessionaire was to conduct its own business in the defendant's store, that is, to conduct a business within a business, and that, accordingly, the plain-

tiff is not prevented from recovering by the provisions of § 18 of said c. 152, as amended.

The order of the Appellate Division, therefore, must be reversed and instead thereof an order is to be entered dismissing the report.

*So ordered.*