HENRY DUBOIS *vs.* SOULE MILL.

Bristol.    October 25, 1948. — December 7, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Workmen's Compensation Act,* Employee of independent contractor.

A finding was warranted that work done by an expert independent contractor for the owner of a mill, an insured under the workmen's compensation act, in making a survey of the heating system of the mill and, as a result thereof, carrying out extensive changes in the system to improve its efficiency was "merely ancillary and incidental to, and . . . no part of or process in, the trade or business carried on by the" insured owner within G. L. (Ter. Ed.) c. 152, § 18, as amended, and an employee of the contractor injured through negligence of the owner while working at the mill on such project was not covered by the owner's insurance nor precluded from maintaining an action at common law against the owner for such injuries.

TORT. Writ in the Superior Court dated November 12, 1943.

The action was tried before *O'Connell,* J.

*E. Field,* (*C. C. McCarthy* with him,) for the defendant.

*G. Walsh,* (*C. A. Adams* with him,) for the plaintiff.

RONAN, J. The plaintiff, a steam fitter employed by an independent contractor, has obtained a verdict for personal injuries sustained by reason of being thrown off a ladder through the negligence of one of the employees of the defendant while the plaintiff was working at the defendant's mill. The jury, in answer to a special question submitted to them, found that the plaintiff's work was merely ancillary and incidental to, and not a part of or process in, the trade or business conducted by the defendant. The defend-

ant excepted to the denial of its motion for a directed verdict and to the refusal of two requests for instructions.

The Eastman Heat Control Corporation, hereinafter called the corporation, specialized in making surveys of the heating systems of large industrial plants and in effecting changes in such systems so as to increase their efficiency and reduce their operating costs. It wrote the defendant, after it had made a study of its plant, recommending the making of certain changes for "the rehabilitation work" required to be done on the heating system. These changes consisted in the main of the substitution of drip traps for forty-two valves; the repair of all existing traps; the arrangement of return traps and drip traps so that one part of the system would not interfere with any other part; and the removal of traps on the first floor and trapping each independent line so as to assure the heating of the coils in the basement of the mill. The letter contained a tentative estimate of the labor cost of making these improvements and enclosed a blank which the defendant was to sign in order to secure the materials "to be used for repairs to the heating system" under the war time regulations. The letter also stated that, if additional work became necessary as the job progressed, that matter would be discussed with the defendant. The defendant accepted the recommendations of the corporation and authorized the work to be done. Additional work was ordered by the defendant from time to time. The furnishing of a thermostat was one piece of additional work, and another was the installation of a steam pipe from the cloth room to the blacksmith shop. It was while engaged in covering this pipe that the plaintiff was injured. Both the corporation and the defendant were insured under the workmen's compensation act.

There was evidence that the defendant had a mechanical department under the supervision of a chief engineer, that in this department there was a steam fitter who was regularly employed by the defendant, and that other mills had similar departments. There was further evidence that any competent steam fitter could do the particular work the plaintiff was performing at the time he was injured, and

that all of the work undertaken by the corporation could be done by competent steam fitters. The defendant contends that the work contracted to be performed by the corporation amounted to no more than making repairs on the heating system and constituted a part of the defendant's business of maintaining and operating its mill, that the plaintiff came within the coverage of the compensation insurance provided by the defendant, and that he could not maintain an action against it at common law to recover damages for his injury.

The statute, G. L. (Ter. Ed.) c. 152, § 18, as amended by St. 1939, c. 93, provides that "If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work . . . and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured . . . ."

The purpose of the statute is to prevent an employer from avoiding the application of the workmen's compensation act by letting out his work to an independent contractor or subcontractor and so depriving the employees of the latter (who have not retained their rights at common law) of the benefits of compensation although they were really engaged in performing the work of the principal. Such employees, being covered by the insurance of the principal, have no right of action against him to recover for personal injuries arising out of and in the course of their employment in such work. *Cozzo* v. *Atlantic Refining Co.* 299 Mass. 260. *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 568.

But if the work undertaken by the independent contractor or subcontractor is merely ancillary and incidental to, and no part of or process in, the trade or business conducted by the principal, an employee of the former is not covered

by the insurance of the latter and, if injured by the negligence of the principal or his employees, may recover damages from him in an action at common law. *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150. *Cannon* v. *Crowley,* 318 Mass. 373. See *Meehan* v. *Gordon,* 307 Mass. 59; *Bencivengo* v. *Walter C. Benson Co. Inc.* 319 Mass. 110. There are undoubtedly many kinds of work the necessity for the . performance of which constantly appears in the everyday use of the premises and is so closely connected with keeping one's factory or mercantile establishment in good condition that they become a part of the trade conducted there. For instance, the removal of an electrical transformer in a milk pasteurizing plant, *MacAleese's Case,* 301 Mass. 25; the washing of windows in a private school, *Hill's Case,* 268 Mass. 491, or in a factory, *Fox* v. *Fafnir Bearing Co.* 107 Conn. 189; the periodical removal of rubbish from a store, *Hoard* v. *Sears Roebuck & Co. Inc.* 122 Conn. 185; the repair of an electric bell signal system in a packing plant, *Hoffman* v. *Cudahy Packing Co.* 161 Kans. 345; and the polishing of the floor of a restaurant, *Bailey* v. *Mosby Hotel Co.* 160 Kans. 258, have all been held to be a part of the business of the principal. On the other hand, the transportation of wool to a wool processor, *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150; the transportation of a gasoline shovel for a general contractor, *Cannon* v. *Crowley,* 318 Mass. 373; the alterations of a building for a gas light company, *Meehan* v. *Gordon,* 307 Mass. 59; the installation of a new heating system in a railroad round house, *King* v. *Palmer,* 129 Conn. 636; the painting of the smokestacks of a factory, *T. Johnson Co.* v. *Industrial Commission,* 306 Ill. 197; and the dusting by airplanes hired by a canning company of fields of farmers who sold their products to the canning company, *Britton* v. *Industrial Commission,* 248 Wis. 549, have been held to be not a part of the business or trade of the principal.

It is difficult at times to draw the line between different kinds of work performed in the repair, alteration or improvement of an industrial plant which are and those which are not a part of or process in the trade or business of the one

who occupies the plant in conducting his trade or business.[1] Sometimes the answer lies in the realm of law and frequently in the domain of fact. *Willard* v. *Bancroft Realty Co.* 262 Mass. 133. *Corbett's Case,* 270 Mass. 162. *Cozzo* v. *Atlantic Refining Co.* 299 Mass. 260.

In the instant case, taking the view of the evidence most favorable to the plaintiff, the jury could find that the work let out to the corporation called for a study and survey of the defendant's heating system by experts to determine what, if any, changes could be made to improve the system and, if its recommendations were adopted, to effect the changes, and, when authorized by the defendant, to perform such additional work as appeared to be necessary as the job progressed. They could find the work constituted one continuous job. The jury might properly assume that a check up and overhauling of the heating system were much more than a matter of routine maintenance that any competent steam fitter could perform, and that the mechanical department of the defendant lacked the skill and ability to determine what alterations should be made to increase the efficiency of the system. There would seem to be no need of seeking expert assistance with the resulting cost if the defendant's employees were able to accomplish what the defendant needed. The work undertaken by the corporation could be found to be of a special character involving substantial changes in the heating system. It might properly be considered as more than a repair job. In any event, whether the rendition of expert services required for the overhauling and altering of the heating system was merely ancillary and incidental to, and not a part of or process in, the defendant's business, was a question of fact. The case is distinguishable from those where a branch of or a part of a defendant's business is let out to an independent contractor having skilled and experienced workmen competent

---

[1] A somewhat similar question has arisen in determining whether the work done brings one within the statutory definition of an employee or excludes him therefrom because his "employment is not in the usual course of the trade, business, profession or occupation of his employer." G. L. (Ter. Ed.) c. 152, § 1 (4), as appearing in St. 1945, c. 369. *Shannon's Case,* 274 Mass. 92. *McDermott's Case,* 283 Mass 74. *Canning's Case,* 283 Mass. 196.

to do that branch of the work, as in *White* v. *George A. Fuller Co.* 226 Mass. 1, and *Willard* v. *Bancroft Realty Co.* 262 Mass. 133. The instant case, although differing in varying degrees, should be classed with *Corbett's Case,* 270 Mass. 162, *Pimental* v. *John E. Cox Co. Inc.* 299 Mass. 579, *Spiers* v. *Elderslie Steamship Co. Ltd.* 2 B. W. C. C. 205, *Luckwill* v. *Auchen Steam Shipping Co. Ltd.* 6 B. W. C. C. 51, *Hayes* v. *S. J. Thompson & Co.* 6 B. W. C. C. 130, and *King* v. *Palmer,* 129 Conn. 636.

There was no error in the refusal to grant the first request of the defendant because it could not be ruled as matter of law that the plaintiff was engaged in doing work which was a part of the defendant's business. The fifth request, so far as it was material, was sufficiently covered in the supplementary instructions to which no exceptions were taken.

*Exceptions overruled.*