KATHLEEN M. GAUSS, administratrix, *vs.* H. N. HARTWELL CO., INC.

Suffolk.   December 4, 1958. — January 14, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Workmen's Compensation Act,* Common employment, Action against third person, Independent contractor.

Delivery of coal by truck by a retail coal company, a wholly owned subsidiary of a wholesale coal company insured under the workmen's compensation act, to a customer of the insured, which owned no trucks and regularly contracted to deliver coal by means of transportation companies to those of its customers who did not call for their own coal, was part of or process in the business carried on by the insured within § 18 of the workmen's compensation act, G. L. c. 152, and an employee of the retail coal company, injured while filling its truck with coal from a hopper under the control of the insured for delivery to the insured's customer, was barred by the doctrine of "common employment" from maintaining an action of tort against the insured.

TORT.   Writ in the Superior Court dated August 23, 1954. The action was tried before *O'Brien,* J.

*Edward J. Barshak,* for the plaintiff.

*Philander S. Ratzkoff,* for the defendant.

WHITTEMORE, J. These are the plaintiff's exceptions to the direction of verdicts for the defendant in an action of tort for negligently causing the death and conscious suffering of the plaintiff's intestate, William E. Gauss. The case, like *McPadden* v. *W. J. Halloran Co.*, *ante*, 189, involves application of the doctrine of common employment under § 18 of the workmen's compensation act (G. L. c. 152) and is controlled by that case. There was no error.

The jury could have found facts as follows: Gauss was an employee of Eastern Fuel Company (Eastern) which was a wholly owned subsidiary of the defendant (Hartwell). Hartwell's business was "wholesale coal." Eastern "was a retail coal company." Pursuant to an arrangement between Eastern and Hartwell, Gauss had on several occasions filled a coal truck of Eastern from a hopper under Hartwell's control on the Mystic docks. He was engaged in such activity on August 14, 1953, when the accident occurred which caused his death. The coal was to be delivered to a customer of Hartwell to whom the coal was being sold by Hartwell and the delivery was to be in consummation of that sale "under an agreement whereby the defendant had hired . . . [Eastern] to make the delivery from the Mystic docks to . . . [the customer's] place of business." Hartwell owned no trucks. Except for the occasions when purchasers "picked up coal for themselves" Hartwell used transportation companies to deliver coal sold by it. Some of Hartwell's customers were retail coal dealers who used their own trucks to "pick up" at the Mystic docks coal sold to them by Hartwell. In terms of total sales "it was not fair to say that most of the sales of coal made by . . . [Hartwell] in 1953 were to retailers." Both Hartwell and Eastern were insured under the act and at the time of the trial Gauss's dependents had been receiving benefits from Eastern's insurer. Gauss had not reserved common law rights.

We think that, as in the *McPadden* case, it was plainly shown that the work which the subcontractor was doing was immersed in the work which the principal contractor

had undertaken to do as a regular part of its business. The evidence required the conclusion that Hartwell regularly contracted to deliver coal to those of its customers who did not call for their own coal. The distinction between such a case and other transportation cases where the issue was held to be for the fact finder is stated in the *McPadden* decision. That Eastern was wholly the corporate creature of Hartwell reinforces the conclusion in this case.

It is not necessary to determine whether, notwithstanding the aspects of the evidence which strongly suggest the contrary, there is any reasonable basis for a finding of the defendant's negligence.

*Exceptions overruled.*