BEATRICE TINDALL *vs.* DENHOLM AND McKAY COMPANY.

Worcester.    January 9, 1964. — February 28, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Workmen's Compensation Act,* Common employment, Action against third
person, Independent contractor, Department store.

The arrangements between the proprietor of a large city department store,
an insured under the Workmen's Compensation Act, G. L. c. 152, and
an insured independent contractor operating a millinery department at
several locations in the store showed as a matter of law that the mil-
linery department was part of the business or "work" of the proprietor
within § 18 of the act, so that the doctrine of "common employment"
barred an action of tort against the proprietor under § 15 for personal
injuries sustained in the store by an employee of the independent con-
tractor through negligence of an employee of the proprietor.

TORT.    Writ in the Superior Court dated March 16, 1959.
The action was tried before *Brogna,* J.

*Stanley B. Milton (Robert C. Milton* with him) for the
defendant.

*James C. Donnelly, Jr.,* for the plaintiff.

KIRK, J.    This action of tort was brought in the name of
the plaintiff, an employee of Allied Millinery Company, Inc.
(Allied), by Allied's insurer, under G. L. c. 152, § 15,[1] to
recover for injuries sustained by her on June 21, 1958, when
she stepped from a "passenger freight elevator" on the de-
fendant's premises.    The operator of the elevator, an em-
ployee of the defendant, was admittedly negligent.[2]    The
plaintiff received compensation from Allied's insurer.    The
defendant also was insured under the act.    The jury re-

[1] "Where the injury for which compensation is payable was caused under
circumstances creating a legal liability in some person other than the insured
to pay damages in respect thereof . . . [and i]f compensation be paid under
this chapter, the insurer may enforce, in the name of the employee . . . the
liability of such other person . . . ."

[2] This case was tried with the case against Emidas Berard, the elevator oper-
ator, but that action was discontinued at the close of the evidence.

turned a verdict for the plaintiff. The defendant, having waived all other exceptions, now relies solely upon its exception to the denial of its motion for a directed verdict. The motion was based on the ground that the work done by the plaintiff's employer was part of and process in the business carried on by the defendant. G. L. c. 152, § 18.

We examine the evidence in the light most favorable to the plaintiff (*Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719; *Dubois* v. *Soule Mill,* 323 Mass. 472, 476; *Howes* v. *Kelman,* 326 Mass. 696–697) to determine whether, as matter of law, the work done by the plaintiff's employer was "part of or process in, the trade or business carried on by the [defendant] insured." G. L. c. 152, § 18.[3] In deciding this question, the test is whether Allied's work was "plainly" a part of the defendant's business. *Roby* v. *Boston & Maine R.R.* 337 Mass. 369, 375. *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 192. *Gauss* v. *H. N. Hartwell Co. Inc.* 338 Mass. 353, 354–355. *Amorosso* v. *Farina Bros. Co. Inc.* 339 Mass. 595, 596.

The following facts, which are undisputed, are taken from the pre-trial order containing stipulations and admissions, an agreement as to certain facts, the lease between Allied and the defendant, and the testimony as summarized in the defendant's bill of exceptions. The defendant owns and operates in Worcester a department store with eighty-eight departments selling a large variety of merchandise, includ-

---

[3] Section 18 requires the insurer of "an insured person," who enters into a contract with an independent contractor to do the work of the insured person, to pay compensation to that contractor's employees if it would have had to do so had the work been performed by the immediate employees of the insured. An insured person to whom this section applies is accordingly granted immunity from tort liability under the judicially evolved doctrine of "common employment," stated and explained in *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 568–569. But, by express provision, § 18 is not applicable to "any contract" between the insured person and an independent contractor "which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured . . . ." If the insurer of an insured person, under the terms of this limitation, is not required to pay compensation to the employees of the independent contractor, it follows that the insured is not protected by the "common employment" doctrine, and, under the provisions of § 15, is subject to tort liability to the insurer of the independent contractor whose employee is injured through the negligence of the insured person. *Alberts* v. *Brockelman Bros. Inc.* 312 Mass. 486, 488–489. *Dubois* v. *Soule Mill,* 323 Mass. 472, 474–475.

ing, for example, women's and men's clothing, and household goods. Although some of the departments are run directly by the defendant, others are operated by independent contractors under a lease arrangement. Allied is one of the independent contractors. It runs the millinery department, and is the owner of the millinery and accessories which are sold at three locations on different floors in the defendant's building. Each location has its own price range and styling. The plaintiff, as the manager of the millinery department, supervised the three locations. She did the buying for the department within the broad limits set by the comptroller in Allied's New York office. She had been in Allied's employ at Worcester for five months before the accident and, in all, had had fifteen years' experience in the millinery business. Allied operated many millinery departments in stores throughout the United States and Canada.

The relationship between Allied and the defendant began in 1930. The terms of this relationship are set out in a lease executed in 1942. Since then the parties have been governed by its provisions. That instrument provided, in essential part, that the defendant leased to Allied certain space for the purpose of selling millinery, which Allied was to keep in full stock; that the defendant was neither to sell nor to permit to be sold similar goods in any other part of the store; that all Allied's employees were to be hired by the defendant's superintendent with the concurrence of Allied's manager, and all such employees were to be governed by the rules and regulations of the defendant; that Allied was to pay to the defendant each month, as rent, eighteen per cent of net sales; that the defendant was to furnish heat, light, and power as well as certain incidental services such as delivery, porter, and window trimming; that all merchandise in the millinery department and all proceeds from sales were to be Allied's exclusive property; and that the defendant would guarantee credit sales, pay Allied's employees and all incidental department expenses out of the proceeds of the millinery department, make final decisions

concerning customer complaints, and, at the close of each month, pay over to Allied the net proceeds from the millinery department. One provision required Allied to carry various kinds of insurance, including workmen's compensation insurance.

There was, apart from the lease, oral testimony which disclosed the following additional undisputed facts. Prior to 1930, the defendant itself ran the millinery department, but thereafter Allied operated it under a lease arrangement. Under that arrangement, all of the sales slips from the millinery department were turned over to the defendant's auditor, and all the proceeds from that department were given to the defendant and deposited by the defendant to its own account. Allied, with respect to its employees in the millinery department, made employers' payments for social security and contributions to Blue Cross-Blue Shield. It also paid employment security taxes and distributed W–2 forms (withholding tax statements). The plaintiff decided what prices would be placed on millinery and millinery accessories. Like other department heads in the store, she coördinated the advertising of millinery with the defendant's advertising department. All public advertising used the defendant's name alone. Bags, boxes, and tags for millinery, when they bore a name, as they usually did, bore only the defendant's name. In fact, Allied's name appeared nowhere in the store or in its advertising.

In determining whether the work of the independent contractor, Allied, is part of the business of the insured person, the defendant, we apply the rule stated by Ronan, J., in *Cannon* v. *Crowley,* 318 Mass. 373, 375: "The character and nature of the business must be determined, and if the work done by an independent contractor is really a *branch or department* of that business . . . it constitutes a part of the business itself" (emphasis supplied). See *Cozzo* v. *Atlantic Ref. Co.* 299 Mass. 260, 266. Compare *Meehan* v. *Gordon,* 307 Mass. 59, 62; *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150, 154–155; *Alberts* v. *Brockelman Bros. Inc.* 312 Mass. 486, 489. As the plaintiff has admitted, it is

customary for a department store to have within it a millinery department. It is beyond dispute that the work done by Allied in the millinery department was a "branch or department" of the defendant's business, for the defendant was in the business of selling a large variety of wearing apparel. It is only natural that it should carry hats to complement its full line of other types of clothing, such as dresses, shoes, hosiery, and lingerie. The work Allied performed in the store, therefore, was plainly part of the business of the defendant.

This result is not affected by the fact that Allied was leasing space in the defendant's store to sell Allied's hats. For that "lease" was "primarily an agreement establishing a *commercial relationship* of some intricacy and importance to both parties" (emphasis supplied). *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 471. The evidence establishes that no ordinary lessor-lessee relationship was created by the lease, but rather that Allied's operations in the store were made an integral part of the business of the defendant. *Amorosso* v. *Farina Bros. Co. Inc.* 339 Mass. 595, 596.

The facts that the plaintiff and all other employees in the millinery department were employed by Allied, and that Allied sold its own merchandise and set its own prices simply show that Allied was, indeed, an *independent* contractor employing its own help and using its own goods to further the business of the defendant in running a department store, and, at the same time, enabling Allied to profit from the relationship. By its express terms, § 18 applies exactly to this type of situation. In fact, we have held that certain independent contractors, employing their own people and utilizing their own supplies or equipment, were doing the work of the "insured person." See, for example, *Willard* v. *Bancroft Realty Co.* 262 Mass. 133, 135. The question is not whether the independent contractor's employees are controlled, or its supplies, equipment, or goods are owned, by the "insured person," but rather whether the work being done by the independent contractor is part of the insured's

Tindall *v.* Denholm & McKay Co.

business. This is made clear by the oft-declared purpose of § 18 which is "to prevent . . . [an insured person] from escaping the obligation of the compensation act by letting out a part of his work to irresponsible subcontractors or independent contractors." *Cannon* v. *Crowley,* 318 Mass. 373, 375. *Dubois* v. *Soule Mill,* 323 Mass. 472, 474.

The plaintiff relies mainly upon *Stratis* v. *McLellan Stores Co.* 311 Mass. 525, involving a situation closely resembling the one at bar. In the *Stratis* case an employee of an independent contractor, which operated a luncheonette concession in the defendant's department store, was injured through the negligence of the defendant. The question was whether § 18 was applicable. There, as here, the independent contractor leased space in the department store to sell its own goods; it hired and paid its own employees. There, as here, the independent contractor carried its own workmen's compensation insurance. In both cases also the store got a percentage of the proceeds of all sales made by the independent contractor. Finally, in both cases, customer complaints were referred by the independent contractor to the store, which reserved the right to make final decisions.

We do not overlook the fact that in the *Stratis* case the store had never operated a luncheonette before engaging the independent contractor whereas in the present case the defendant had operated a millinery department before leasing space to Allied. This fact, in itself, appears to be of little consequence in the light of the rule which we apply. The significant consideration is not when the particular undertaking was commenced, but whether, whenever commenced, it is the kind of undertaking which customarily is carried on as part of the business in which the insured is engaged. The *Stratis* case held that "the concessionaire was to conduct its own business in the defendant's store, that is, to conduct a business within a business, and that, accordingly, the plaintiff is not prevented from recovering by the provisions of § 18 . . . ." (536–537). The real question, however, in both cases is not whether the independent

Tindall *v*. Denholm & McKay Co.

contractor is conducting its own business within the business of the "insured person" but rather whether the work which the "insured person" has engaged the independent contractor to do is "part of the business" of the insured. If the test were whether the independent contractor was conducting a "business within a business," as the *Stratis* case says, then a department store could easily escape the provisions of the act by leasing out *all* its departments to independent contractors. It could thereby obtain a percentage of all sales made, give the public the appearance of being a unified department store, and avoid making provision for workmen's compensation for the employees of the independent contractors. We decline to be bound by a decision which construes the workmen's compensation act so as to defeat one of its clear purposes as stated above.

The judge acted obviously, and quite understandably, in reliance upon *Stratis* v. *McLellan Stores Co.* 311 Mass. 525. In so far as the *Stratis* case is at variance with what we say here, it may be considered overruled. The defendant's exceptions are sustained, and judgment is to be entered for the defendant. G. L. (Ter. Ed.) c. 231, § 125.

*So ordered.*