OLGA MANASTER & others, executors, *vs.* MAX GOPIN.

Suffolk. · November 3, 1953. — December 3, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Landlord and Tenant*, Renewal of lease, Extension of lease, Exemption from liability, Pipes. *Negligence*, Contractual limitation of liability.

A provision of a lease entered into in 1944, that the lessee should "save the Lessor harmless from all loss and damage in the leased premises occasioned by the . . . escape of water . . . or by the bursting of the pipes" precluded recovery by the lessee from the lessor for damage to the lessee's goods from water escaping from a burst pipe in the demised premises through alleged negligence of the lessor. [571]

A lease for two years, providing that the "Lessee herein shall have the right to renew this lease for the further term of three years on the same terms and conditions of this indenture" and that "failure of the Lessee to give notice in writing to the Lessor one hundred days prior to the expiration of the term herein provided of his intention to vacate the premises by him occupied, at the expiration of the term, shall constitute a renewal of this lease as is herein provided," was, upon failure of the lessee to give the notice specified, ipso facto established for the further term of three years although no new lease was executed. [572–573]

TORT. Writ in the Superior Court dated January 7, 1949.

The action was tried before *Brogna*, J.

*Bernard Kaplan*, for the plaintiffs.

*Walter F. Henneberry*, for the defendant.

COUNIHAN, J. This is an action to recover for damage to personal property as a result of water leaking from a broken steam pipe on premises owned by the defendant and leased to the testator of the plaintiffs. The declaration is grounded upon negligence of the defendant in maintaining or repairing steam or water pipes on the demised premises. It is in two counts, one for damage sustained on February 3, 1948, and the other for damage sustained on February 6, 1948.

The action comes here upon an exception of the plaintiffs to the direction of a verdict for the defendant. There was no error.

Facts deduced from the evidence and about which there appears to be no dispute may be summarized as follows: On November 14, 1944, the defendant in writing leased certain premises to Samuel Manaster, the plaintiffs' testator. Included in the lease were the second and fourth floors of 40–46 Waltham Street, Boston. The lease was for a term of two years beginning September 1, 1944, and the lessor among other things agreed to furnish heat and warm comfortably the demised premises during such hours of the day as it is customary to furnish heat in buildings of this class. It contained the following significant provisions: "The Lessee herein shall have the right to renew this lease for the further term of three years on the same terms and conditions of this indenture. And failure of the Lessee to give notice in writing to the Lessor one hundred days prior to the expiration of the term herein provided of his intention to vacate the premises by him occupied, at the expiration of the term, shall constitute a renewal of this lease as is herein provided." The lease further provided: "And the Lessee does hereby both individually and as a firm, covenant with the Lessor that the Lessee during the said term and for such further time as he or any other person or persons claiming under him shall hold the said premises or any part thereof, will pay unto the Lessor the said rent at the times, and in the manner aforesaid (except as hereinafter provided), and will keep all and singular the said premises in such repair, order and condition as the same are in at the commencement of said term or may be put in during the continuance thereof, damage by fire or other unavoidable casualty only excepted; and will save the Lessor harmless from all loss and damage in the leased premises occasioned by the use or escape of water upon the said premises, or by the bursting of the pipes, or by any nuisance made or suffered on the premises."

These premises were occupied by the testator until his death on October 21, 1946, and thereafter by the plaintiffs until after February 6, 1948, at least, for the manufacture and storage of paper and plastic boxes. On February 3, 1948, at about 3 P.M. it was discovered that a return steam

pipe on the fourth floor of 40–46 Waltham Street had burst and water was escaping from this pipe onto the plaintiffs' merchandise and was flowing between floor planks to the floors below causing further damage to the plaintiffs' property. Ice could be seen inside that pipe by looking through a slit or crack in it. On February 6, 1948, another pipe in the same coil in which the first pipe was located burst and caused other damage to the plaintiffs' goods.

No notice in writing of intention to vacate as provided in the lease was ever given by the lessee to the lessor.

In these circumstances we think it clear that if the lease dated November 14, 1944, was in existence and effective at the time the damage was caused, the plaintiffs cannot recover because of the indemnity provision in the lease. *R. H. Macy & Co. Inc.* v. *Fall River*, 323 Mass. 624, 626, and cases cited. General Laws (Ter. Ed.) c. 186, § 15,[1] inserted by St. 1945, c. 445, § 1, does not render void the indemnity clause because § 2[2] of St. 1945, c. 445, expressly says that c. 445 applies only to leases and rental agreements entered into after October 1, 1945. *R. H. Macy & Co. Inc.* v. *Fall River*, *supra*, at page 627. *Levins* v. *Theopold*, 326 Mass. 511. Here, as has been pointed out, the lease was entered into on November 14, 1944.

The issue therefore to be determined is whether this lease was in effect and binding on the parties on February 3 and February 6, 1948.

The plaintiffs maintain that the second sentence of the renewal provision hereinbefore referred to, which reads, "And failure of the Lessee to give notice in writing to the

---

[1] "Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to indemnify the lessor or landlord or hold the lessor or landlord harmless, or preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways or other appurtenance used in connection therewith, and not within the exclusive control of the lessee or tenant, shall be deemed to be against public policy and void."

[2] "This act shall take effect on October first in the current year, and shall apply only to leases and rental agreements entered into after said date."

Lessor one hundred days prior to the expiration of the term
herein provided of his intention to vacate the premises by
him occupied, at the expiration of the term, shall constitute
a renewal of this lease as is herein provided," requires the
execution of a new lease between the parties upon the ex-
piration of the original lease. They assert that in the ab-
sence of such a new lease (and it is conceded that no new
lease was executed) the lessee continues on merely as a
tenant at sufferance so that the indemnity provision in the
lease is inapplicable. The defendant on the other hand con-
tends that no new lease is necessary because the language
of the lease above quoted is in effect, in the absence of no-
tice to vacate as therein provided, an extension of the lease
for a further term of three years. We are disposed to agree
with the contention of the defendant.

It is to be noted that the first sentence of the renewal pro-
vision of the lease reads: "The Lessee herein shall have the
right to renew this lease for the further term of three years
on the same terms and conditions of this indenture." If
this sentence stood alone it might give color to the claim of
the plaintiffs that the execution of a new lease is necessary.
*Judkins* v. *Charette*, 255 Mass. 76, 81.

This sentence, however, must be read and construed with
the second sentence, and as so construed the second sen-
tence appears to us to mean that failure to give notice of
intention to vacate automatically constitutes a renewal or
extension of the original lease. *Donovan Motor Car Co.* v.
*Niles*, 246 Mass. 106, 107. There is therefore no need of
going through the formality of executing a new lease. It
was said in *Mutual Paper Co.* v. *Hoague-Sprague Corp.* 297
Mass. 294, at page 299, "It is true that in some particulars
renewals and extensions have some points of difference.
An option for renewal implies the giving of a new lease upon
the same terms as the old lease, whereas an option for ex-
tension contemplates a continuance of the old lease for a
further period. ·. . . In many respects in leases the words
'renewal' and 'extension' are words of similar import. The
use of the word 'renewal' alone in a lease provision is not

enough to prevent such a provision from being construed as an extension, where the latter result is shown by the circumstances to have been intended by the parties." This we think is the situation here. The first sentence clearly appears to be an option for a renewal. The second sentence, however, is not in the nature of an option but distinctly provides that the happening of the contingency referred to, namely, failure to give written notice to vacate, "shall constitute a renewal of this lease as is herein provided." One of the dictionary meanings of "constitute" is to set up, establish; and therefore upon the happening of the contingency the lease was ipso facto set up and established for a further term of three years. In these circumstances the lease might well be construed to be a lease for five years terminable by the lessee at the end of two years if he took advantage of the opportunity to terminate it by giving the notice of intention to vacate as provided in it.

The defendant's contention that there was no evidence of negligence, and we do not intimate that there was any, need not be discussed.

*Exceptions overruled.*