WAH M. HOM & another *vs.* HONG T. WONG & another
(and a companion case[1]).

Norfolk.    March 4, 1957. — May 10, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, &
WHITTEMORE, JJ.

*Easement. Way,* Private: creation. *Adverse Possession and Prescription.*
*Mortgage,* Of real estate: severance of title.

Where it appeared that three of four lots in common ownership fronted
on a way and the fourth lot, called lot L, consisted of an open area
abutting the rear of the front lots together with a panhandle strip
extending from the open area to the way; that separate mortgages of
the lots were given containing express references to a foot passageway
along the panhandle strip and the rear of the front lots; that the
mortgage of lot L was given before buildings were constructed on the
front lots and use of lot L by municipal trucks and tradesmen for the
benefit of the occupants of the front lots began; and that eventually
the mortgages were all foreclosed, there was no basis for a claim there-
after made by the owners of the front lots that they had an easement
by implication to use lot L as a driveway for automobiles to the rear
parts of their respective lots. [84–85]
Facts respecting certain lots of land fronting on a way and a lot called
lot L consisting of an open area abutting the rear of the front lots
together with a panhandle strip extending from the open area to the
way, all of which lots were in common ownership but subject to sepa-
rate mortgages for a period of many years until the mortgages were
foreclosed, and respecting use of lot L during that period and there-
after by municipal trucks and tradesmen for the benefit of the occu-
pants of the front lots, did not support a claim of the eventual owners
of the front lots to an easement by prescription to use lot L as a drive-
way for automobiles to the rear parts of their respective lots.   [85–86]

TWO BILLS IN EQUITY, filed in the Superior Court on De-
cember 3, 1954, and December 14, 1954, respectively.

The plaintiffs appealed from final decrees entered by
*Good,* J., following reports of a master.

---

[1] The companion case is by Philip Berler and others against the defendants
in the first case.

*Max J. Allen,* (*Frankland W. L. Miles* with him,) for the plaintiffs.

*Edward J. Duggan,* (*John M. Casey, Jr.,* with him,) for the defendants.

WHITTEMORE, J. The plaintiffs Klein, Berler and Hom own respectively lots B, C, and D so called for our purposes in a block of buildings which we take to be apartment houses[1] at the southeast corner of Alton Place and Harvard Street in Brookline. The houses on lots A through F front on Alton Place which runs easterly from Harvard Street. Lot G and the house thereon, on the corner, and lots H through K, and the houses thereon, fronting on Harvard Street, do not concern us.

The bills of complaint aver a right of way for all purposes over lot L so called. Lot L is comprised of an open area in the rear of lots A through F, G and K and a panhandle about twenty-five feet wide extending from Alton Place along the easterly side of lot A. The plaintiffs' brief discloses that they seek to establish the right to use lot L as a driveway for driving automobiles onto the rear yards of their respective lots.

The cases were referred to a master and come here on the plaintiffs' appeals from final decrees which dismissed the bills of complaint, and, pursuant to a prayer in the answers for such relief, enjoined the plaintiffs and those claiming under them, in perpetuity, from using lot L for any purpose excepting, however, the use of a foot passageway which is therein described. The plaintiffs filed objections to the report which stand as exceptions (Rule 90 of the Superior Court [1954]) and contend as specified in the objections that the conclusions of the master were inconsistent with subsidiary findings. There was no error.

---

[1] The answers do not admit the allegations of the bills of complaint that the buildings are apartment houses and there is no express finding that such is the fact. A restriction of record in force when the buildings were built required "that no synagogue or other buildings other than apartment houses and private garages shall be erected on said premises or any part thereof during a period of five years now next ensuing." Photographs in evidence are reasonable confirmation that the buildings are dwelling houses conforming to this restriction.

A concrete foot passageway runs on lot L along the easterly side of lot A to the rear of the building on lot A, then it turns and runs westerly along and close to the rear walls of the buildings on lots A through F, setting them off from their rear yards. There are in each chain of title references to a passageway from Alton Place to the rear of the lots A to K as shown on a plan. We conclude from the plan in evidence that this passageway of record, in its course from Alton Place along the easterly line of lot A, is coincident with the existing passageway. But the record passageway as shown on the plan continues along the remainder of the easterly line of lot A and the southerly line of lots A through F rather than along the rear of the buildings on these lots as does the existing passageway. Nothing in these cases turns on this difference of location.

The original tract was subdivided in 1916. From 1916 to 1945 lots B, C, D, and L were in common ownership but they were subject to separate mortgages from and after dates as follows: lot B, June 1, 1916; lot D, October 26, 1916; lot L, November 2, 1916; lot C, August 18, 1919. Foreclosures of mortgages occurred on dates as follows: lot B, May 28, 1945; lot C, on or about April 23, 1946; lot D, June 25, 1948; lot L, May 13, 1949. The plaintiffs and the defendants take title by mesne conveyances which followed the foreclosures.

The buildings on the lots were completed in 1917. The master found that from 1917 to the beginning of these suits "lot L has been used by rubbish and garbage trucks of the town of Brookline, by various tradespeople, viz., milkmen, laundrymen, furniture movers, plumbers, carpenters, painters and deliverymen for the benefit of the occupants of lots A to F, and has also been used as a short cut by other persons walking from Harvard Street to Alton Place. These uses were begun with the permission of the original owners . . . of all the lots A to L . . . . There has been neither protest nor express permission to those persons who from 1917 . . . have used the driveway on lot L." Upon recommittal the master "based upon the

facts stated in my original report . . . [found and re-
ported] as follows: Upon the testimony adduced at the
hearing before me, I find that the respondents' lot is not a
public way and that the petitioners acquired no easement
over it by express or implied grant, except for a limited
passageway right as appears on plan of land, exhibit 4.
I further find that neither the petitioners nor their prede-
cessors in title have used or passed over the land of the
respondents openly, adversely, and under a claim of right
for more than twenty years."

In the view we take of the cases it is not necessary to
determine whether all the concluding findings can be deemed
to be based only on subsidiary facts found. We assume
for our decision that they are so based.

From 1917 to July, 1948, the line between lot L and lots
A through F was marked by shrubbery and poplar trees
which formed the easterly and southerly landscaped back-
ground for the common lawn-garden area into which the
back yards of lots A through F were merged in this period.
This garden area was further defined on its long north side
by a hedge and flower bed adjacent to the foot passageway,
and by shrubs at the west end.

In 1948, the poplar trees were removed. In 1949 a chain
link fence about three and one half feet high was erected
enclosing the back yard of lot D. In 1949 or 1950 a similar
fence was erected enclosing the back yard of lot B. In 1954
the then owner of lot L, not the defendants, placed a curbing
of substantial wooden beams, bolted to the concrete, along
the boundary line where the poplar trees had stood. The
plaintiff Berler removed a portion of the beam adjacent to
his lot, C, in 1955. The plaintiff Klein, joint owner of lot
B, caused a portion of the beam adjacent to his lot to be
removed in 1955.

There are twenty-two stalls for garages on lot L, along its
southerly side. It does not appear when they were built.
The exposed surface of the lot is covered with concrete.

1. There is no basis for a claim of an implied grant of the
claimed easement. The mortgages on lots B and D and L

were given (1916) before the buildings were completed (1917) and there is no finding suggesting any use of lot L for the benefit of any lots prior to 1917. While the mortgage on lot C was given in 1919, after use of lot L by tradespeople had begun, the title to lot L is determined by the 1916 mortgage of that lot and there was of course at that time no "open and continuous use of one parcel for the benefit of the other," from which an intention to create an easement on the severance of full legal and equitable title could be implied. See *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 108; *Hurley* v. *Guzzi*, 328 Mass. 293, 295; *Sorel* v. *Boisjolie*, 330 Mass. 513, 516. There would be little basis, in any event, for implying an easement in view of the express creation in the original mortgage deeds of an easement in the foot passageway as shown on the plan and the absence of evidence that at that time such was not fully reasonable access to the rear of the buildings. *Joyce* v. *Devaney*, 322 Mass. 544. *Krinsky* v. *Hoffman*, 326 Mass. 683, 687–689.

2. There is nothing in the facts to show the use of lot L, for the prescriptive period, in the way which the plaintiffs now claim the right to use it and no use sufficient to support the new use claimed. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 299, and cases cited. See *Swenson* v. *Marino*, 306 Mass. 582, 583, 586. No use is found of lot L by the owners or occupants of lots B, C, and D. No access to the rear of these lots across the line between each of lots B, C, and D and lot L is found or inferable from the findings.[1] The right now claimed, to drive vehicles across lot L and into lots B, C, and D, would manifestly overload any easement created by the trade use of lot L if such easement had arisen. There is nothing in *Parks* v. *Bishop*, 120 Mass. 340, cited by the plaintiffs, indicating that an easement can be

---

[1] A photograph in evidence shows a walk, set off by a wire fence extending from the concrete passageway at a point about midway in the hedge on the north side of the lawn-garden, into and around a circular central flower bed. If this also continued to the south line and through the poplar trees (this is possibly suggested but cannot be concluded as a fact from the photograph, and there is no finding) it would not show use sufficient to support that now asserted.

extended in the way here sought. Compare *Baldwin* v. *Boston & Maine Railroad,* 181 Mass. 166.

3. During the period of common ownership of all the lots and a mortgage on lot L, that is, from a date in 1916 to a date in 1945, the common owners and their tenants, on the subsidiary facts found, did nothing which would require the conclusion that they were asserting rights in lot L for the benefit of any of lots B, C, and D adverse to the title granted in 1916 to the mortgagee of lot L. The continued limited use made of lot L by tradespeople, begun by permission, was insignificant against the mortgagee where ownership of the equities of the dominant and servient estates was united and tenants in possession would look to their landlords for permission to use common areas not specifically leased. The signs at the front entrances on Alton Place reading "All goods delivered at rear door only" did not, in view of the foot passageway, imply direction of or consent to the entry of vehicles onto lot L. Had the signs implied any use of lot L, there would have been no implication that this was to continue after common ownership of all lots ceased. The signs on lot L, from and after sometime prior to 1932 reading "No Trespassing," "No Parking," and "Private Driveway," spoke to those who had no rights in the driveway. They did not establish who had or had not such rights or suggest that such rights as existed otherwise than of record had other basis than the decision of the common owners as to how they would use and permit tenants to use their common property while it was so held. It is not necessary to consider what acts of those who were the owners of both the dominant and servient estates and of tenants in possession of the dominant estates, after a break in the complete unity of title resulting from the mortgaging of the dominant and the servient estates (see *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 106–108; *Goldstein* v. *Beal,* 317 Mass. 750, 754), could be deemed adverse to the mortgagee of the servient estate, so as to create rights by prescription against such mortgagee and those claiming under him. See *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 549; *Ramos* v. *Mello,*

328 Mass. 320, 322; *Marshall* v. *Francis*, 332 Mass. 282, 287; *Oldfield* v. *Smith*, 304 Mass. 590, 593. There was therefore no error in enjoining the plaintiffs and those claiming under them from using lot L for any purpose except for passage in the described foot passageway.

*Final decrees affirmed with costs of the appeals to the appellees.*