LOMEO LEBEL *vs.* ROSA S. BACKMAN & others.

Essex. April 5, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Sublease, Assignment of lease, Extension of lease, Quiet enjoyment, Premises leased. *Equity Jurisdiction,* Interference with lessee's rights, Enforcement of lease. *Easement. Way,* Private: creation.

Where a lease demising a filling station and automobile repair shop for a designated term at a specified rental provided that "Lessee may sublet but will not assign this lease," and the lessee purported to sublease the same premises for the same term and rental by an instrument containing covenants by the sublessee the breach of which would give the lessee a right to terminate the purported sublease, that instrument was a sublease and not an assignment. [763]

Under a lease providing for an original term of ten years and giving the lessee an option "to renew and extend the term" of the lease for "an additional period of five" years upon notice, a notice seasonably given by the lessee "to renew" the original lease "for a further five year period" sufficed to do so without the execution of a new instrument. [763]

Lebel v. Backman.

Where it appeared in a suit in equity that a landowner had leased certain premises and the lessee, a defendant, had subleased them to the plaintiff, that subsequently other defendants had acquired the premises and an assignment of the lease and, while the plaintiff was rightfully in possession of the premises, had manifested a continuing intent to interfere with his quiet enjoyment thereof by erecting a fence which would exclude him from use of an adjoining right of way, and that the plaintiff, among other prayers, asked for an order that the defendant lessee take "whatever legal action is necessary to prevent . . . [the defendant owners] from erecting said fence," it was proper to enter a decree enjoining the defendant owners from interfering with the plaintiff's quiet enjoyment of the premises and from erecting a fence in, or preventing his use of, the right of way.   [763–764]

Facts appearing in a suit in equity involving a private right of way "used by several owners or operators of property adjacent to the same as a means of ingress and egress . . . for many years" showed that when an owner of adjacent business premises having "a grant of the easement" in the way leased the premises the lessee and a sublessee from him acquired a right to use the way by implication.   [764–765]

BILL IN EQUITY, filed in the Superior Court on March 1, 1960.

The suit was heard by *Macaulay, J.*, on the report of a master.   The defendants Samuel P. and Rosa S. Backman appealed from the final decree.

*Morris Michelson,* for the defendants.

*John T. Ronan,* for the plaintiff.

WHITTEMORE, J.   In this bill Lomeo Lebel asked the Superior Court to enjoin Samuel P. and Rosa S. Backman as the owners of premises on Spring Street, Lynn, consisting of a filling station and automobile repair shop, from interfering with Lebel's quiet enjoyment thereof.

The master's report and the exhibits establish the facts stated in this and subsequent paragraphs.   One Labovitz, by lease of December 30, 1949 (hereinafter, "the lease"), leased the premises to the defendant George W. Pickering Co. (Pickering) for ten years beginning January 1, 1950, at a monthly rental of $130.   Pickering by instrument of the same date subleased to the plaintiff the same premises for the same term and rental.[1]   The defendant Samuel P.

---

[1] The premises are confusingly described in the leases and this is reflected in the master's report.   However, the bill of complaint in paragraph 2 describes them as "at No. 45 Spring Street . . . consisting of a filling station and approximately 5,000 square feet of land, together with the first floor and base-

Backman bought the premises in 1957, and the lease was assigned to Backman and the defendant Rosa S. Backman. Title was then transferred to Samuel and Rosa Backman.

The lease provided "that the lessee . . . shall have an option to renew and extend the term of the within lease for an additional period of five (5) years from and after the expiration of said original term providing that the lessee gives written notice to the lessor at least ninety days before the expiration of said original term of its intention to exercise said option. In the event that said option to renew and extend shall be exercised by the lessee, the rental during such renewal or extended term shall be at the rate of . . . $150 . . . per month . . . ." The sublease contained a similar option but the expression used was "option to extend." The lease provided: "Lessee may sublet but will not assign this lease without first obtaining on each occasion the consent in writing of the lessor."

On February 18, 1959, Pickering sent a registered letter to Rosa Backman which in addition to demanding heat (because the sublessee was withholding rent) stated, "We also tender our required notice to renew our lease for a further five year period." Mrs. Backman replied on March 4, 1959, "such renewal is not in order as there have been numerous violations . . . ." Lebel on August 27, 1959, wrote Pickering "I hereby wish to exercise my option to renew lease . . . ." On September 3, 1959, Pickering wrote Rosa Backman, "Confirming our letter to you of February 18, we are again notifying you that it is the intention of this company to remain in possession . . . under our right to renew and extend . . . for a further five-year term." On January 4, 1960, Mrs. Backman wrote Pickering "returning your check . . . [for] $130 . . . apparently intended

---

ment at No. 41–43 Spring Street . . . including such portions of all buildings, structures and appurtenances therein as may hereafter be employed as an oil or gasoline service station" and the answer of the Backmans "admit[s] the lease described in paragraph two" and Pickering's answer admits all the allegations of that paragraph. The copies of the plan attached to each lease show premises thus described. Although the report places Nathan Place on the easterly side of the premises, the plan shows that they are bounded easterly by Spring Street and westerly by Nathan Place.

. . . to cover . . . January, 1960. This lease expired December 31, 1959 . . . you have not qualified for renewal or extension . . . . We have made other plans . . . . On and after January 1, 1960, you, and your subtenant, Leo Lebel, will be tenants at sufferance . . . . Kindly remove your effects immediately . . . ."

The Backmans on and after the purchase in 1957 had been seeking possession of the premises to "put them to uses more advantageous to other properties that they owned bordering on Nathan Place. The plaintiff claims that he was harassed in various ways by the failure of Backman to furnish heat, the parking of the Backman automobile on Spring Street, this interfering with the use of the grease lift, and in other ways." "Matters apparently came to a head on or about February 24, 1960, when the . . . Backman[s] had a chain link fence erected along . . . Nathan Place thereby depriving the plaintiff of the use of the way. Within a day of two, the fence was taken down by some persons unknown and left on the open way until the plaintiff, for the purpose of protecting the fence, rolled it up and placed it in the basement with other property belonging to the Backmans. This precipitated the proceedings in question."

The master concluded that the erection of the fence "or any effort on the part of the Backmans to prevent the use of Nathan Place by the plaintiff in the conduct of his business was unwarranted, if, as a matter of law, the plaintiff . . . was . . . a lessee of the premises . . . ."

The final decree enjoined the Backmans from interfering with the plaintiff's peaceful enjoyment of the premises and from erecting fences in, or preventing the plaintiff's use of, Nathan Place, and decreed that the plaintiff was entitled to occupy the premises "including the right of free access to Nathan Place for . . . ingress and egress" "by reason of the properly exercised option . . . by . . . Pickering . . . and the properly exercised option of said sublease by the plaintiff for the further period of five years from December 30, 1959."

1. The instrument of purported sublease was a sublease and not an assignment. Pickering retained a reversionary interest. Provisions in the sublease gave Pickering the right to terminate it if its covenants were broken. Some of the covenants went beyond those in the lease to Pickering such as Lebel's undertakings in respect of the stocking and sale of oil products and the proper use of the station without encumbering or removing any of the equipment on the premises. "If the smallest reversionary interest is retained, the tenant takes as sub-lessee, and not as assignee." *Dunlap* v. *Bullard,* 131 Mass. 161, 163. *Essex Lunch, Inc.* v. *Boston Lunch Co.* 229 Mass. 557, 559. The intent of the lease to allow subleasing is express. Compare *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 473.

2. The notice of February 18, 1959, was sufficient to "renew and extend" the lease. Under this language it was not in contemplation, nor required in law, that there be a new instrument. In *O'Brien* v. *Hurley,* 325 Mass. 249, 251–252, on the precedent of several earlier decisions, we construed an option of "renewal" to require a new lease or a formal instrument of extension. We do not broaden the rule there exemplified to include a case where the word "extend" is also used. The parties reasonably showed an intention that a notice should be sufficient to extend the term. We hold that it was. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 234. *Mutual Paper Co.* v. *Hoague-Sprague Corp.* 297 Mass. 294, 299. *Manaster* v. *Gopin,* 330 Mass. 569, 572–573.

3. The plaintiff expressly asked not only for injunctive relief against erection of "fences" by the Backmans and against their interference with his quiet enjoyment but also that the court order Pickering to take "whatever legal action is necessary to prevent . . . [the Backmans] from erecting said fence." The plaintiff had to show the right to possession; hence he had to have determined the validity of the exercise of the options to renew. This was not, as the Backmans contend, an enforcement of covenants by Lebel against persons not in privity with him. The Back-

mans upon evidence of continuing intent to deprive the plaintiff of the use of his leasehold could be enjoined. *Winchester* v. *O'Brien,* 266 Mass. 33, 37. *Loosian* v. *Goudreault,* 335 Mass. 253. There is in any event a sufficient showing of a continuing intent to exclude the plaintiff from Nathan Place to support the injunction in respect thereof. But were it necessary to proceed only under the covenants of the lease and sublease it was appropriate and proper to join Pickering and demand that it proceed. The case in effect includes the aspect of a bill by Pickering at the instance of Lebel against the Backmans. See *265 Tremont St. Inc.* v. *Hamilburg,* 321 Mass. 353, 360; *Miller* v. *Prescott,* 163 Mass. 12. For a discussion of equitable relief for breach of covenants in a lease see *Charles E. Burt, Inc.* v. *Seven Grand Corp.* 340 Mass. 124, 128–130.

4. The Backmans, orally at the argument and in a reply brief subsequently filed, contend that the decree errs in establishing the plaintiff's right in Nathan Place.

The leased premises are bounded on the west by Nathan Place. Neither lease makes express mention of rights in this private way. However, the copies of the plan attached to each lease show this as "Right of Way." Photographs in evidence show an entrance in the south wall of the building on the leased premises, a short distance easterly of Nathan Place, marked "Service." This we take it is a wall in the building marked "Lubritorium" on the plan. The door marked "Service" appears to be in or near the small area shown as "D" on the plan adjacent to the "Right of Way." The lease includes a provision reserving an area "D" to the lessor "in the event he is required . . . to change the shipping and receiving entrance of elevator door from its present location . . . . If . . . [it is] relocated, lessor will build a ramp, rather than a wall, if suitable. . . . [If such is built] in the area marked 'D' . . . the lessee shall have the option to cancel this lease . . .."

The master found that Labovitz acquired the property in 1940 and became the lessor of the plaintiff. At that time a "door was cut, making a service entrance at or near the

Nathan Place side of the property . . . . The surface of the area was graded and the area blacktopped to Nathan Place.'' The plaintiff for twenty years or more had maintained a filling station, grease lift, and repair shop and also parked automobiles which usually entered from Spring Street and left by Nathan Place. That right of way had also been used by other property owners for many years. The plaintiff first occupied the premises in 1930 or 1931 and used Nathan Place for ingress and egress for ten years under the ownership of one Goddard.

The master found that ''Nathan Place is a right of way used by several owners or operators of property adjacent to the same as a means of ingress and egress — many of whom had used the way for many years.'' The Backmans' brief construes the master's report and deeds in evidence to show that the ''owners of the fee from which the leasehold occupied by the plaintiff was carved had a grant of the easement in Nathan Place.''[1] If Labovitz did not have this right, the Backmans have no color of right to interfere with the plaintiff's use. Accepting the Backmans' construction, the facts reviewed above show an implied grant to use Nathan Place which arose when Labovitz gave the lease to Pickering. *Case* v. *Minot,* 158 Mass. 577, 584–585. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105–108. *Hurley* v. *Guzzi,* 328 Mass. 293. *Sorel* v. *Boisjolie,* 330 Mass. 513, 516–517. Compare *Dale* v. *Bedal,* 305 Mass. 102; *Hom* v. *Wong,* 336 Mass. 81, 84–85. See *Harper* v. *Parish of the Advent,* 7 Allen, 478, 480. It is not significant that the master failed to find expressly that such an easement existed. The decree rightly establishes the plaintiff's rights against the Backmans in Nathan Place.

*Decree affirmed with costs of this appeal.*

---

[1] The references in the brief include the deeds from heirs of Labovitz to Samuel P. Backman and from Backman to the straw who conveyed to Samuel P. and Rosa S. Backman. The latter deeds refer to ''rights and easements for light, air and passage'' created by certain old deeds which are listed.