Kottmyer, J.

Introduction

The plaintiff, A&A Weston, Inc. (“A&A”), brought this action against 39 Main, LLC., (“39 Main”) seeking damages for breach of contract, interference with contract and violation of G.L.c. 93A, §2. A&A alleges that 39 Main unreasonably withheld its consent to the *697 assignment of a lease held by A&A in the spring of 1998. Defendant 39 Main has moved for summary judgment on the grounds that A&A does not have standing to maintain this action because A&A had assigned the lease to Ground Round, Inc.
For the reasons which follow, 39 Main’s motion for summary judgment is DENIED.

Summary Judgment Record

The summary judgment record, viewed in the light most favorable to A&A, establishes the following.
On or about June 12, 1981, A&A[1] and Bernard L. Caniff signed a commercial lease (the “Lease”), pursuant to which A&A leased a certain building located at 39 Main Street in Waltham, Massachusetts (the “premises”), for the purpose of operating a Ground Round restaurant. On or about March 29, 1996, the defendant, 39 Main, LLC (“39 Main”) acquired the Premises and became Landlord under the Lease.
From June 1981 to at least January 27, 1996,[2] A&A owned and operated the Ground Round restaurant located at 39 Main Street, Waltham, Massachusetts and was Tenant under the Lease. On or about January 27, 1996, A&A and Ground Round, Inc., entered into a Management and Operating Agreement pursuant to which the Ground Round, Inc., would manage and operate the Ground Round restaurant on the premises. Article VII of the Management and Operating Agreement provided: “The Assignment [of the lease] is to be coterminous with this Management Agreement. Upon termination of the Management Agreement, [Ground Round] shall reassign its right, title, and interest in [the Lease] to [A&A] or its Assignee.” By letter dated February 13, 1998, Ground Round gave formal notice to A&A that it was terminating the Management and Operating Agreement and Ground Round and A&A thereafter agreed to terminate the Management and Operating Agreement.
On or about March 3, 1998, A&A and Waltham Pubs, Inc. (‘WPI”) entered into an asset purchase agreement and an accompanying letter agreement (the “Asset Purchase Agreement"), pursuant to which WPI would purchase A&A’s assets. Under the terms of the Asset Purchase Agreement, A&A was to receive cash payment of $250,000 and annual royalty payments of 1.5% of WPI’s gross sales over a 10-year period along with other valuable consideration. The Asset Purchase Agreement provided that A&A would remain obligated to the landlord under the lease, notwithstanding the WPI assignment. A&A was required to obtain 30 Main’s written consent to the assignment to WPI within twenty days. A&A had represented to WPI that A&A was the holder of the “tenant’s interest” in the Lease and could assign the “tenant’s interest” to WPI with the landlord’s consent.
On or about March 3, 1998, A&A requested that 39 Main consent to an assignment of the Lease to WPI. 39 Main responded to A&A’s request by a letter dated March 24, 1998, stating that there had to be a “reassignment of the Lease to A&A” before any assignment to WPI. 39 Main subsequently insisted that WPI agree to cap its sale of alcohol at 23% of its gross sales as a condition of its consent. The lease contained no such cap. WPI refused to agree to the cap and terminated the Asset Purchase Agreement.
On or about May 4, 1998, 39 Main withdrew its insistence on a cap on sales of alcohol and consented to the Assignment to WPI. On or about May 18, 1998, A&A entered into an amended Asset Purchase Agreement (“Amended Asset Purchase Agreement”) with WPI. The terms of the Amended Asset Purchase Agreement were less favorable to A&A than the terms of the original Asset Purchase Agreement. Among other things, cash payments were reduced from $250,000 to $225,000; royalty payments were reduced from 1.5% to 1.0% of WPI’s gross sales over a 10-year period; and the royalty payments under the Amended Asset Purchase Agreement were to be held in escrow and paid only if WPI was able to negotiate an extension of the lease with 39 Main.
A&A brought this action against 39 Main alleging breach of contract, breach of covenant of good faith and fair dealing, interference with contract and violation of G.L.c. 93A, §2. The defendant argues that A&A has no standing to maintain this action because A&A assigned its right, title and interest in the Lease to Ground Round.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc. 404 Mass. 14, 17(1989).
In deciding a motion for summary judgment, the facts must be viewed “in the light most favorable to .. . [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991), citing Graham v. Quincy Food Serv. Employees Ass’n & Hosp.; Library & Pub. Employees Union, 407 Mass. 601, 603 (1990).
The sole basis for this motion for summary judgment is the defendant’s argument that A&A assigned its interest in the lease to Ground Round, and therefore, lacks standing to bring this action. The defendant asserts that “[a]n assignment of a right is a manifestation of the assignor’s intention to transfer it by virtue of which the assignor’s right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.” Restatement (Second) of Contracts, §317 (1979). The defendant’s reliance on the Restatement of Contracts *698 is misplaced. The Restatement clearly recognizes that the law governing interests in land is “to some extent different from the law governing contracts in general . . . The law relating to covenants in conveyances and leases of land grew up as part of the law of real property and is left to the Restatement, Second, of Property.” Restatement (Second) of Contracts, §316, comment b (1979) (concerning scope of chapter on assignment of contracts, including §317).
Nor does the case law relied on by the defendant govern this case. See Macondo's Profit Corp. v. Motorola Communications and Electronics, Inc., 863 F.Sup. 148 (S.D.N.Y. 1994).Macondo’s Profit Corp. concerned the irrevocable assignment of a cause of action. Id. at 148 & n. 1. By contrast, this case involves a revocable transfer by A&A to Ground Round of an interest in the Premises.
A&A disputes that it assigned its entire interest in the leased property and asserts that it at all times retained a reversionary interest in the Lease. A&A further asserts that the transfer of interest between it and Ground Round amounted to a sublease rather than an assignment. The distinction between an assignment and a sublease is well established. A transfer by the lessee of the whole or a specific part of the leasehold estate for the residue of the term is an assignment. Marcelle, Inc. v. Sol & S. Marcus Co., 274 Mass. 469, 472 (1931). A transfer by the lessee of the whole or a specific part of the leasehold estate for a part of the term is a sublease. Id.
Where, as here, the tenant transfers its interest, but retains the right to terminate the transfer, the transfer is deemed to be a sublease rather than an assignment. See Lebel u. Backman, 342 Mass. 759, 763 (1961). “If the smallest reversionary interest is retained, the tenant takes as sub-lessee, and not as assignee.” Id. See also Restatement (Second) Property (Landlord & Tenant), §15.1, comment I (1977) (“tenant has made a sublease ... if the right to possession of the leased property may return to him upon the occurrence of some event” if “tenant desires to make an assignment, he must not retain any reversionary interest in that which he transfers”) (emphasis added).
A&A transferred its interest in the leased property to the Ground Round subject to termination upon notice. Because A&A retained a reversionary interest in the lease, Ground Round was never brought into privity of estate with the defendant, 39 Main. See Restatement (Second) of Property, §16.1, comment f (1976).[3] As a matter of law, there is no privity of estate between a transferee and a landlord where, as here, the transfer is subject to termination. Miller v. Prescott, 163 Mass. 12, 13 (1895).
Viewing the facts in the light most favorable to A&A, the defendant, 39 Main, has failed to demonstrate as a matter of law that A&A’s' transfer of interest to Ground Round amounted to an assignment rather than a sublease. A&A at all times maintained a rever-sionary interest in the Lease and therefore has standing to maintain this action.
ORDER
For the foregoing reasons, the Defendant’s Motion for Summary Judgment is DENIED.

At that time, A&A’s name was A&A Associates, Inc.

A material dispute exists as to whether A&A owned the restaurant after January 27, 1996.

Section 16.1, comment f, provides: “A transfer by the tenant of his interest in the leased property may be for the lease term but subject to termination on the occurrence of some event before the end of the lease term, in which case the transferred interest is to revert to the tenant for the balance of the term. In such case the transferee is not brought into privity of estate with the other party to the lease.”